**IN THE UNITED DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MARIE YOLENE DUMAY-MELLON, on behalf of herself and those similarly situated,** *Plaintiff* v. **PANAMERICAN CONSULTING, LLC; EPPS, LLC; and JOHN DOES 1–10,** *Defendants* | Civil Action No.: **NOTICE OF REMOVAL** |

To: Yongmoon Kim, Esquire
Hasan Siddiqui, Esquire
Kim Law Firm, LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
*Attorneys for Plaintiff*

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, Defendant EPPS, LLC ("Defendant"), by and through its undersigned counsel, hereby removes this civil action from the Superior Court of New Jersey, Law Division, Bergen County, to the United States District Court for the District of New Jersey, and states as follows:

1. On or about August 4, 2025, Plaintiff filed a putative class action Complaint in the Superior Court of New Jersey, Bergen County, captioned *Marie Y. Dumay-Mellon v. Panamerican Consulting, LLC; EPPS, LLC; and John Does 1–10*, Docket No. BER-L-5244-25. A copy of the Summons, Complaint, and all other pleadings served on EPPS, LLC are attached hereto as **Exhibit A**.

2. The Complaint alleges, *inter alia*, violations of federal law, including the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101, and the Federal

Trade Commission Telemarketing Sales Rule, 16 C.F.R. § 310.1, *et seq*. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. § 1331.

3. In addition, this Court has diversity jurisdiction under 28 U.S.C. § 1332(d) (Class Action Fairness Act), because:

a. Plaintiff is a citizen of New Jersey;

b. Defendant EPPS, LLC is a Nevada limited liability company with its principal place of business in Nevada;

c. Defendant Panamerican Consulting, LLC is a California limited liability company with its principal place of business in California;

d. The alleged damages exceed $5,000,000, exclusive of interest and costs, based on the putative class claims for treble damages, statutory penalties, attorneys' fees, and injunctive relief; and

e. The proposed class includes more than 100 members.

4. Removal is therefore proper under both 28 U.S.C. § 1331 and § 1332(d).

5. Venue is proper in this Court under 28 U.S.C. § 1441(a) because the United States District Court for the District of New Jersey is the federal judicial district embracing Bergen County, New Jersey.

6. EPPS, LLC was served with the Summons and Complaint on or about August 14, 2025. This Notice of Removal is timely filed within 30 days of service, as required by 28 U.S.C. § 1446(b).

7. Additionally, Defendant Panamerican Consulting, LLC has consented to the removal of this action, and EPPS, LLC will ensure that all properly served defendants are notified in accordance with 28 U.S.C. § 1446(b)(2)(A).

8. Pursuant to 28 U.S.C. § 1446(d), written notice of this Notice of Removal is being served upon Plaintiff's counsel and a copy is being filed with the Clerk of the Superior Court of New Jersey, Bergen County.

9. In filing this Notice of Removal, EPPS, LLC does not waive any defenses, including but not limited to lack of personal jurisdiction, improper venue, or failure to state a claim.

**WHEREFORE**, Defendant EPPS, LLC respectfully requests that this action be removed from the Superior Court of New Jersey, Bergen County, to the United States District Court for the District of New Jersey.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

Date: September 11, 2025

By: /s/ Bryan R. Lentz
Bryan R. Lentz, Esquire
Attorney ID # 029621993
141 High Street
Mount Holly, NJ 08081
Ph: 215-735-3900

*Attorney for Defendant EPPS, LLC*

**PROOF OF MAILING**

I, Bryan R. Lentz, Esquire, hereby certify that on September 11, 2025, a true and correct copy of the foregoing Notice of Removal and Civil Cover Sheet was served upon the following parties of record by U.S. first-class mail:

To: Yongmoon Kim, Esquire
Hasan Siddiqui, Esquire
Kim Law Firm, LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements by me are willfully false, I am subject to punishment.

**BOCHETTO & LENTZ, P.C.**

Date: September 11, 2025

By: */s/ Bryan R. Lentz*
Bryan R. Lentz, Esquire
141 High Street
Mount Holly, NJ 08081
*Attorney for Defendant EPPS, LLC*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

MARIE YOLENE DUMAY-MELLON,
on behalf of herself and those similarly situated,

**(b)** County of Residence of First Listed Plaintiff: Union
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kim Law Firm, LLC
411 Hackensack, Ave., Suite 701
Hackensack, NJ 07601 - Phone No. (201) 273-7117

**DEFENDANTS**

PANAMERICAN CONSULTING, LLC;
EPPS, LLC; and JOHN DOES 1–10,

County of Residence of First Listed Defendant: Las Vegas, Nevada
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Bochetto & Lentz. P.C
203 High Street
Mount Holly, NJ 08060 - Phone No. (856) 427-0631

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(*Do not cite jurisdictional statutes unless diversity*)**:
28 U.S.C. §§ 1331, 1332, 1441, and 1446

Brief description of cause:
Contract/Commercial Transaction

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ________ DOCKET NUMBER ________

DATE: 09/11/2025

SIGNATURE OF ATTORNEY OF RECORD: /s/ Bryan R. Lentz

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

# Exhibit "A"

Yongmoon Kim (NJ Atty. ID #026122011)
ykim@kimlf.com
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax: (201) 273-7117
*Attorneys for Marie Y. Dumay-Mellon*

| | |
|---|---|
| MARIE Y. DUMAY-MELLON, *on behalf of herself and those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>PANAMERICAN CONSULTING, LLC;<br>EPPS, LLC;<br>and JOHN DOES 1 to 10,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br><br>Civil Action<br><br>Docket No. BER-L-5244-25<br><br>**SUMMONS** |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiffs' attorneys whose names and addresses appear above, or to plaintiffs, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiffs demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

Dated: August 14, 2025

*/s/ Michelle M. Smith*
Michelle M. Smith
Clerk of the Superior Court of New Jersey

Name of Defendant to be served: **EPPS, LLC**

Address of Defendant to be served:

**c/o Nevada Corporate Headquarters, Inc.**
**4730 S. Fort Apache Road, Suite 300**
**Las Vegas, NV, 89147**

# Civil Case Information Statement

## Case Details: BERGEN | Civil Part Docket# L-005244-25

**Case Caption:** DUMAY-MELLON MARIE VS PANAMERICAN CONSULTI NG, L
**Case Initiation Date:** 08/04/2025
**Attorney Name:** YONGMOON KIM
**Firm Name:** KIM LAW FIRM LLC
**Address:** 411 HACKENSACK AVE STE 701 HACKENSACK NJ 07601
**Phone:** 2012737117
**Name of Party:** PLAINTIFF : Dumay-Mellon, Marie, Y
**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION
**Document Type:** A
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: Marie Y Dumay-Mellon? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES **Title 59?** NO **Consumer Fraud?** YES **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/04/2025
Dated

/s/ YONGMOON KIM
Signed

Yongmoon Kim (NJ Atty. ID #026122011)
ykim@kimlf.com
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
*Attorneys for Plaintiff Marie Yolene Dumay-Mellon*

| | |
|---|---|
| MARIE YOLENE DUMAY-MELLON, *on behalf of herself and those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>PANAMERICAN CONSULTING, LLC; EPPS, LLC; and JOHN DOES 1 to 10,<br><br>Defendants. | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY**<br><br>Docket No. BER-L-<br><br>Civil Action<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff, Marie Yolene Dumay-Mellon ("Plaintiff"), residing in New Jersey, on behalf of herself and others similarly situated, by way of Complaint against Defendant Panamerican Consulting, LLC ("Panamerican"), Defendant EPPS, LLC a/k/a Electronic Payment Process Systems, LLC ("EPPS"), and John Does 1 to 10 (collectively, "Defendants"), states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction to entertain this matter.

2. Venue in this action is proper in Bergen County because Defendant

regularly conducts business here.

## II. INTRODUCTION

3. Defendants have created and are engaged in a plan or scheme to defraud the residents of the State of New Jersey and other states by performing unlawful debt adjustment activities in the State of New Jersey. Defendants Panamerican and EPPS, and its individual members, recruits, employs, and partners with both front-end lead generators and back-end service companies and financial institutions in New Jersey and other states to provide debt adjustment services, creating the impression that these services are to be performed or provided lawfully. Defendants never obtained the prerequisite Debt Adjuster license, pursuant to the New Jersey Debt Adjustment and Credit Counseling Act, N.J.S.A. 17:16G-1, *et seq*. ("NJDA").

4. This is a putative class action arising from Defendants' fraudulent and unlawful business practice of contracting with consumers with the pretense that Defendants would settle the debts of consumers and unlawfully collecting funds from consumer while failing to timely disburse payments to creditors.

5. This unlawful plan or scheme is in violation of the NJDA, since, amongst other things, Defendants Panamerican and EPPS are for-profit entities that lack the requisite licenses to perform these services.

6. Further, Defendants charged Plaintiff and putative class members fees

in excess of the maximum amount allowed by the NJDA.

7. Defendants failed to disburse all the funds it received to creditors from debtors within 10 days of receipt, as required by the NJDA.

8. Defendants' representations that they were authorized to be Debt Adjusters in New Jersey while collecting money from consumers is a fraudulent business practice, subject to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("CFA").

9. Defendants' omission that they could not legally act as Debt Adjusters in New Jersey while collecting money from consumers to act as Debt Adjusters is a fraudulent business practice, subject to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("CFA").

10. Additionally, the unauthorized practice of law and the violation of the NJDA constitute crimes under New Jersey law and are a violation of the New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1, et seq. ("RICO"), as well as other laws, such as the Truth-In-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to - 18 ("TCCWNA").

11. Plaintiff and the putative class members are New Jersey consumers against whom Defendants have unlawfully induced payments as they misrepresented Defendants' legal statuses as a Debt Adjusters.

12. Defendants violated the Telemarketing and Consumer Fraud and

BER-L-005244-25 08/04/2025 9:25:09 PM Pg 4 of 34 Trans ID: LCV20252176487

Abuse Prevention Act and its implementing regulations, 15 U.S.C. 6101, *et seq*., and the Federal Trade Commission Telemarketing Sales Rule, 16 C.F.R. 310.1, *et seq*., ("TSR").

13. Thus, Plaintiff brings this action on behalf of herself and a class of other New Jersey consumers who paid Defendants for debt adjustment and other credit counseling services when Defendants were not properly licensed pursuant to New Jersey law.

14. Additionally, Plaintiff seeks declaratory judgment under the Uniform Declaratory Judgments Law ("UDJL") at N.J.S.A. 2A:16-53, monetary damages on behalf of a Class of consumers from whom Defendants charged for debt adjustment and credit counseling services, including recovery of damages under the NJDA, treble damages under the CFA and RICO, penalties and damages from the TCCWNA, and disgorgement based on unjust enrichment.

15. The claims of Plaintiff and the proposed Class are directly related to Defendants' unlicensed and unlawful business practice and would not exist but for the actions voluntarily conducted by Defendants.

## III. PARTIES

16. Plaintiff Marie Yolene Dumay-Mellon, a New Jersey resident, is a natural person, who resides at 1505 McCandless Street, Linden, NJ 07036.

17. At all times relevant to this lawsuit, Plaintiff was a citizen of the State

of New Jersey.

18. Defendant Panamerican Consulting, LLC is a for-profit limited liability company. Upon information and belief, and according to the contract entered between Panamerican and Plaintiff, Panamerican is headquartered at 3843 South Bristol Street, #308, Santa Ana, CA 92704.

19. Panamerican is in the business of allegedly entering into agreements with consumers under the guise of providing debt validation services; in reality, however, these agreements constitute debt adjustment services, wherein Panamerican undertakes to settle and contest the consumer's debts in exchange for a monthly fee. Panamerican allegedly generates profit by collecting fees without providing any amount of credit assistance to the consumers and without obtaining the license to be a Debt Adjuster.

20. Defendant EPPS, LLC a/k/a Electronic Payment Process Systems, LLC is a for-profit limited liability company incorporated in Nevada on November 23, 2009, with its address listed as P.O. Box 27740, Las Vegas, NV 89126. Its registered agent is Nevada Corporate Headquarters, Inc., located at 4730 S. Fort Apache Road, Suite 300, Las Vegas, NV 89174.

21. EPPS is in the business of providing payment processing services for unlicensed Debt Adjusters, like Panamerican, and by withdrawing funds from consumers which are later distributed to Panamerican fraudulently, and EPPS

retains a fee for their service.

22. Defendants John Does 1 to 10 are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to the law, acted consistent with and oversaw policies and procedures used by the employees of Defendants that are the subject of this Complaint. Those defendants personally control the illegal acts, policies, and practices utilized by Defendants and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint. Those fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

23. Some or all of John Does 1-10 set the policies and practices complained of herein.

24. Some or all of John Does 1-10 were actively engaged in the practices complained of herein.

## IV. FACTUAL ALLEGATIONS

### A. Facts Specific to the Plaintiff

25. Some time around or before August 2021, Panamerican called Plaintiff offering debt consolidation services.

26. On or about August 3, 2021, Plaintiff and Defendants entered into an

agreement wherein Defendants would negotiate and settle debts on behalf of Plaintiff and pay off her debts with funds taken from Plaintiff.

27. The Contract contained an authorization form from EPPS for the withdrawal of funds. *See* Exhibit A, at p.11.

28. The Contract detailed the accounts that Plaintiff was aware of and specifically sought Defendants' services for. *See* Exhibit A, at p.4.

29. The Contract also contained a payment schedule, whereby Plaintiff was to deposit $254.87 into Plaintiff's account with a bank selected by EPPS each month for 17 months. *See* Exhibit A, at p. 5. The first payment occurred on August 30, 2021.

30. Plaintiff made payments pursuant to the Contract up until January of 2023, where she paid a total of approximately $4,332.79 while receiving no benefits or services from Defendants.

31. To Plaintiff's surprise, on May 8, 2023, one of Plaintiff's creditors initiated an action against Plaintiff alleging Plaintiff failed to make payments on her debt.

32. Plaintiff learned that despite timely depositing money with Defendants, Defendants allowed Plaintiff's accounts to be delinquent causing Plaintiff great financial harm.

33. Plaintiff made payments to Defendants pursuant to the Contract for 17

months, while receiving no benefits or services from Defendants.

34. Defendants never disbursed the funds with which Plaintiff provided them.

35. Even if Defendants were properly licensed as non-profit debt adjusters, Defendants charged Plaintiff fees in excess of the amount allowed by the NJDA.

**B. Facts Related to New Jersey Consumers**

36. Each contract Defendants entered into with New Jersey consumers for debt adjustment and credit counseling services was made in violation of New Jersey law, because Defendants, as Debt Adjusters, collected funds while operating as a for-profit entity, required consumers to pay illegally high fees, and because Defendants were not licensed as required by the NJDA.

37. Therefore, since the contracts were made in violation of the NJDA, the contracts entered between Defendants and consumers are unconscionable, void, and unenforceable.

38. Thus, these contracts were void ab initio.

39. These contracts contained numerous unconscionable and unlawful provisions.

40. Defendants attempted to collect payments on these illegal contracts.

41. New Jersey consumers made payments to Defendants because

Defendants misrepresented that they were lawfully allowed to serve as Debt Adjusters in New Jersey.

42. Defendants acted with unclean hands when they took actions in violation of New Jersey law and are not entitled to any equitable relief.

43. Upon information and belief, Defendants charged fees in excess of the amount allowed by New Jersey law.

44. Defendants, as a matter of policy, would not disburse to the appropriate creditors all funds received from consumers within 10 days of receipt of those funds, in violation of the NJDA.

45. Defendants acted in concert and as a scheme to avoid being licensed under the NJDA and to collect monies from consumers based on a false representation.

46. Panamerican agreed to handle legal matters on behalf of Plaintiff and New Jersey consumers. This includes negotiating settlements with creditors and debt collectors and providing legal advice regarding debt defense and taking legal action against creditors and debt collectors.

## V. CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 4:32 of the New Jersey Rules of Court.

48. Subject to discovery and further investigation which may require Plaintiff to modify the following class definition at the time Plaintiff moves for class certification, Plaintiff seeks certification of a Class, defined as follows:

> **Class:** All natural persons with addresses in the State of New Jersey who (i) entered into contracts/agreements for debt adjustment, and ancillary, services from Defendants, or (ii) made payment(s) to Defendants, in connection with or relating to debt adjustment, and ancillary, services.
>
> All natural persons with addresses in the State of New Jersey who (i) entered into contracts/agreements for debt adjustment, and ancillary, services from Defendants, or (ii) made payment(s) to Defendants, in connection with or relating to debt adjustment, and ancillary, services, and (3) initiated or received an interstate call from any Defendant.

49. Plaintiff seeks damages and declaratory relief on behalf of the class, as well as attorney's fees and costs to the extent allowed by law.

50. Plaintiff seeks to recover statutory damages, punitive damages, actual damages, restitution, and attorney's fees and costs on behalf of herself and all Class members under the claims asserted herein.

51. The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

52. There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals, including but not limited to:

a. Whether Defendants are each a "person" subject to the requirements of the CFA.

b. Whether Defendants are "sellers" under the TCCWNA.

c. Whether Defendants violated the NJDA when they sold debt adjustment and credit counseling service contracts to New Jersey Consumers, and whether such contracts violated a clearly established legal right.

d. Whether the Defendants are for-profit entities providing debt adjustment and credit counselling services in violation of the NJDA.

e. Whether the Defendants violated the NJDA in the fees they charged, and the Defendants' failure to timely distribute payments to creditors.

f. Whether Defendants' business practices are illegal in New Jersey.

g. Whether, and to what extent, Defendants conduct constituted criminal violations and/or predicate acts subject to RICO.

h. Whether Defendants' failure to obtain the valid license pursuant to the NJDA while contracting with Plaintiff and those similarly situated was made in connection with the sale of merchandise within the meaning of the CFA at N.J.S.A. 56:8-2.

i. Whether Defendants' failure to obtain the valid license pursuant to the NJDA while contracting with Plaintiff and those similarly situated constitutes an unconscionable commercial practice, deception, fraud, false promise pretense and/or misrepresentation in violation of the CFA at N.J.S.A.56:8-2

j. Whether Defendants' charging illegal fees and fees in excess of the amount allowed by the NJDA to Plaintiff and those similarly situated, and failing to disburse funds within 10 days of receipt as required by the NJDA constitutes an unconscionable commercial practice, deception, fraud, false promise pretense and/or

misrepresentation in violation of the CFA at N.J.S.A.56:8-2

k. The amounts that the Class are entitled to recover from Defendants for damages, disgorgement, and restitution.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort, and expense by avoiding thousands of individual suits that will be based on the same legal theories that can be resolved in a single proceeding.

54. Plaintiff's claims are typical of the claims of the members of the Class.

55. The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members.

56. Plaintiff does not have interests antagonistic to those of the Class.

57. Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

58. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would

establish incompatible standards of conduct for Defendants in this action or the prosecution of separate actions by individual members of the Class would create the risk that adjudications with respect to individual members of the Class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

59. Plaintiff does not anticipate any difficulty in the management of this litigation.

60. Plaintiff's counsel includes counsel who has tried similar claims for a class before a jury.

## VI. CAUSES OF ACTION

## VII. COUNT I
## New Jersey Debt Adjustment and Credit Counseling Act on Behalf of Herself and the Class

61. Plaintiff and members of the class repeat and reallege all allegations as if set forth at length herein.

62. Defendants are "Debt Adjusters" as defined under the NJDA. N.J.S.A. § 17:16G- 1(c)(1).

63. Defendants conducted business as Debt Adjusters but are not a nonprofit organization, in violation of the NJDA. N.J.S.A. § 17:16G-2(a).

64. Even if Defendants were a nonprofit organization, they failed to obtain a license and acted as a debt adjuster in violation of the NJDA. N.J.S.A. § 17:16G-2(b).

65. In all their communications with Plaintiff and New Jersey consumers, Defendants knowingly omitted the fact that they are not licensed as Debt Adjusters, as required by the NJDA.

66. Any contract entered between consumers and Defendants related to debt adjustment services are void ab initio and cannot be enforced.

67. Defendants further violated the NJDA by charging fees in excess of the amount allowed by the statute and by failing to distribute the funds provided by Plaintiff and consumers within 10 days of receipt as required by the statute. N.J.S.A. 17:16G-6; N.J.S.A. 17:16G-9(a).

68. Defendants' violations of the NJDA injured Plaintiff and New Jersey consumers.

69. Thus, Plaintiff and New Jersey consumers are entitled to recover damages pursuant to N.J.S.A. 17:16G-8.

**WHEREFORE,** as to Count One, Plaintiff, on behalf of herself and the putative class members, hereby requests a Judgment against Defendants,

a. Granting class certification for class-wide equitable relief under R. 4:32-1(b)(2), for recovery of damages pursuant to N.J.S.A. 17:16G-8, ruling that:

i. The Defendants violated the NJDA by engaging as Debt Adjusters in New Jersey as a for-profit entity and without a license;

ii. Plaintiff's and putative class members' contracts with Defendants were illegal and are void, in accordance with the NJDA;

iii. That the void contracts cannot be collected upon by Defendants;

iv. The fees charged by the Defendants were in excess of the amount allowed under the NJDA;

v. The Defendants violated the NJDA by failing to disburse debtors' funds to creditors within 10 days of receipt;

vi. At all relevant times hereto, Defendants did not have the legal capacity to collect or receive any principal, interest or charges under the void contracts; and

vii. All monies collected by Defendants from consumers should be returned to consumers.

b. Awarding damages to Plaintiff and the Class; and

c. For such other and further relief as the Court deems equitable and just.

## VIII. COUNT II
## Violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, and The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101, *et seq.*, and the Federal Trade Commission Telemarketing Sales Rule, 16 C.F.R. 310.1, *et seq.* on Behalf of Herself and the Class

70. Plaintiff and members of the class repeat and reallege all allegations as if set forth at length herein.

71. The Defendants operate an unlawful business scheme and are engaging in unconscionable commercial practices, fraudulent activity, false

promises, misrepresentation and knowing admissions of fact as described above in violation of the CFA. N.J.S.A 56:8-2.

72. Defendants are "persons" within the meaning of the CFA at N.J.S.A. 56:8-1.

73. Plaintiff and those similarly situated purchased "merchandise" within the meaning of the CFA at N.J.S.A. 56:8-1.

74. Defendants engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in connection with the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

75. Defendants engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in the subsequent performance of the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

76. Defendants committed unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in direct violation of the CFA at N.J.S.A. 56:8-2 by:

a. Failing to disclose Defendants are unlawfully conducting debt adjustment and credit counseling services in New Jersey since Defendants are for-profit entities and were not licensed, pursuant to the NJDA or N.J.S.A 2C:21-19(f);

b. Charging illegal fees, in violation of the NJDA;

c. Failing to disburse funds within 10 days of receipt, in violation of

the NJDA;

d. Engaging in the unauthorized practice of law as described in Count VIII of this Complaint as to Defendant Panamerican; and

e. Demanding and accepting payments from Plaintiff and those similarly situated on the illegal contracts.

77. As a result of Defendants' unlawful actions, Plaintiff and the Class members suffered ascertainable loss in the amount of monies collected, and/or paid on the void contracts, entitling them to treble damages under the CFA, at N.J.S.A. 56:8-19.

78. Plaintiff is a "person" and "customer" as defined by the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, *et seq*., and its implementing regulation, Federal Trade Commission Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(n), (y).

79. Defendants are "sellers" and "telemarketers" as defined by the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, *et seq*., and the TSR, 16 C.F.R. § 310.2(dd), (ff).

80. Defendants regularly engage in interstate telemarketing to sell products or services using the telephone as defined by the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq., and the TSR, 16 C.F.R. §310.2(gg). Defendants provide "debt relief service[s]" as defined by the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq., and the TSR at 16 C.F.R. §310.2(o):

> Debt relief service means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

81. Defendants do not meet any Exemption to the TSR's application as set forth in 16 C.F.R. §310.6.

82. Defendants received interstate phone calls from Plaintiff.

83. Defendants are subject to the TSR.

84. Section 310.3(a)(viii)(A) of the TSR requires sellers or telemarketers such as Defendants to clearly and conspicuously disclose to Plaintiff the amount of time necessary to achieve the represented results, and the time by which the Defendants would make a bona fide settlement offer to any creditors or debt collectors of Plaintiff.

85. Section 310.3(a)(viii)(B) of the TSR requires sellers or telemarketers such as Defendants to clearly and conspicuously disclose to Plaintiff the amount of money that the Claimant must accumulate before a bona fide offer of settlement would be made to a creditor. Section 310.3(a)(viii)(C) of the TSR requires sellers or telemarketers such as Defendants to clearly and conspicuously disclose to Plaintiff that the use of the 'service' might adversely impact the Claimant's creditworthiness, that by use of the service the Plaintiff may be subject to

collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest.

86. Section 310.3(a)(viii)(D) of the TSR requires sellers or telemarketers such as Defendants to clearly and conspicuously disclose to Plaintiff that the funds held in the requisite financial account are owned exclusively by Plaintiff and that those funds may be withdrawn at any time with exception only for fees earned by Defendants in compliance with §310.4(a)(5)(i)(A).

87. As sellers and telemarketers of debt relief services, Defendants was required to make the disclosures set forth in the TSR and failed to make the disclosures required under Sections 310.3(a)(1)(viii)(A-D) to its customers.

88. Defendants violated the TSR by failing to make the disclosures required under Section 310.3(a)(1) (viii)(A-D) to Plaintiff.

89. Section 310.4(a)(5) of the TSR prohibits sellers or telemarketers such as Defendants from requesting or receiving payment of any fee or consideration for their debt relief service prior to renegotiation, settlement, reduction, or otherwise alteration of the terms of at least one debt and the customer has made at least one payment pursuant to that resolution.

90. As sellers and telemarketers of debt relief services, Defendants are prohibited from receiving payment contrary to the requirements set forth in Section 310.4(a)(5).

91. Defendants violated Section 310.4(a)(5) of the TSR by demanding and receiving payments from Plaintiff prior to renegotiation, settlement, reduction, or otherwise alteration of the terms of at least one debt and before the customer has made at least one payment pursuant to that resolution.

92. Section 310.3(a)(2) of the TSR prohibits sellers or telemarketers such as Defendants from misrepresenting: (i) the total cost of their services; (ii) any material conditions on the use of their service; (iii) any material aspect of the performance, efficacy, nature or central characteristics of their service; and (iv) any material aspect of the customer's ability to cancel or withdraw from the service; and (x) any material aspect of any debt relief service. As sellers and telemarketers of debt relief services, Defendants are prohibited from making misrepresentations as set forth in Section 310.3(a)(2).

93. Defendants violated Section 310.3(a)(2) of the TSR by making misrepresentations to Plaintiff regarding the nature of their services; total cost of their services; the amount of money to be saved by using their services; the amount of money that must be accumulated before any bona fide offer to resolve debt will be initiated; the impact on creditworthiness; the amount of prior customers to attain the represented results; the amount of time necessary to achieve the represented results; and the effect of the service on collection efforts of the customer's creditors or debt collectors, among other misrepresentations.

94. Defendants' violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq., and its implementing regulation, the TSR, are deceptive and abusive practices as defined therein.

95. Defendants are subject to the TSR as set forth herein.

96. Defendants' violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq., and its implementing regulation, the TSR, 16 C.F.R. §§ 310.3, 310.4 as set forth herein are deceptive and abusive practices as defined therein.

97. Defendants' violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq., and its implementing regulation, the TSR, as set forth herein, constitute unlawful acts in violation of the CFA.

98. Defendants' violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq., and its implementing regulation, the TSR, is an unconscionable commercial practice or other direct affirmative act in violation of the CFA at N.J.S.A. § 56:8-2. Defendants' unlawful acts under the TSR and the CFA caused Plaintiff to suffer an ascertainable loss in an amount equal to, but not limited to, unlawful monies paid to Defendants.

99. Plaintiff is entitled to treble damages, attorneys' fees, and costs pursuant to N.J.S.A. §56:8-19.

**WHEREFORE,** as to Count Two, Plaintiff, on behalf of herself and the

putative Class members, hereby requests a Judgment against Defendants,

a. Granting class certification of the Class under R. 4:32-1(b)(3);

b. Awarding treble damages under the CFA, at N.J.S.A. 56:8-19;

c. Granting a permanent injunction against Defendants, pursuant to the CFA, at N.J.S.A. 56:8-19, prohibiting them from making or entering into any new debt adjustment service contracts and from making any further attempts to enforce payments from New Jersey consumers related to the illegal debt adjustment service contracts, including an injunction against any attempt to collect upon, enforce or assign the contracts, or to seek collection remedies on or assign any outstanding balances;

d. Directing Defendants to provide equitable notice relief pursuant to the CFA, providing for notice to Class members of the declaratory and injunctive ruling;

e. Awarding Plaintiff's counsel reasonable attorneys' fees and costs under the CFA, at N.J.S.A. 56:8-19;

f. For pre-judgment and post-judgment interest; and

g. For such other and further relief as the Court deems equitable and just.

## IX. COUNT III
## Unjust Enrichment and Disgorgement on Behalf of Herself and the Class

100. Plaintiff and the members of the Class repeat and reallege all allegations as if set forth at length herein.

101. Defendants have been unjustly enriched by the funds that they have received from Plaintiff and the Class through unenforceable contracts.

102. The funds collected by Defendants conferred a benefit on Defendants.

103. Defendants know that they received a benefit by receiving funds from

Plaintiff and the Class.

104. Defendants' retention of the benefits conferred on them based on unenforceable contracts entered without a license pursuant to NJDA and N.J.S.A 2C:21-19(f), as well as other unlawful acts described herein, would be unjust.

105. Defendants should be ordered to disgorge the payments or provide restitution to the Class.

106. The disgorgement or restitution should include any profits or other benefits enjoyed by the Defendants as a result of the acceptance of the Class's funds.

**WHEREFORE,** as to Count Three, Plaintiff, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendants,

a. Granting class certification of the Class under R. 4:32-1(b)(3);

b. A money judgment for restitution or disgorgement of all amounts collected by Defendants from the Class including any profits or other benefit enjoyed by Defendants as a result of unlawfully receiving and using the funds from them;

c. For attorney's fees, litigation expenses and costs in connection with this action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just.

## X. Count IV
## Truth-In-Consumer Contract, Warranty and Notice Act on Behalf of Herself and the Class

BER-L-005244-25 08/04/2025 9:25:09 PM Pg 24 of 34 Trans ID: LCV20252176487

107. Plaintiff and members of the class repeat and reallege all prior allegations as if set forth at length herein.

108. Defendants are "sellers" as defined under the TCCWNA.

109. Defendants' contracts with Plaintiff and other New Jersey consumers violate several clearly established legal rights, such as failing to acquire a license under the NJDA and N.J.S.A 2C:21-19(f).

110. Plaintiff and New Jersey consumers have the right to be protected from unlicensed Debt Adjusters, pursuant to the NJDA, and the right to be protected against unlawful business practices under the CFA.

111. Such violations of clearly established legal rights resulted in damages for Plaintiff and the Class.

112. Defendants' contracts contained provisions by which the consumer waives his rights under TCCWNA.

113. Defendants' contracts stated that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable, or inapplicable within the State of New Jersey.

**WHEREFORE,** as to Count Four, Plaintiff, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendants,

a. Granting class certification of the Class under R. 4:32-1(b)(3);

b. A civil penalty of not less than $100.00 to each Class member, in addition to actual damages;

c. For attorney's fees, litigation expenses and costs in connection with this
action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just.

## XI. COUNT V
## New Jersey Racketeer Influenced and Corrupt Organizations Act on Behalf of Herself and the Class

114. Plaintiff and the members of the class repeat and reallege all prior allegations as if set forth at length herein.

115. At all relevant times, Defendants were engaged in trade or commerce or in activities affecting trade or commerce in connection with the sale of debt adjustment services in the State of New Jersey to New Jersey consumers.

116. Defendants have, among other things, engaged in a pattern of racketeering, including criminal conduct that has either the same or similar purposes, results, participants, victims, methods of commission or are otherwise inter-related by distinguishing characteristics and are not isolated incidents.

117. The criminal conduct includes, but is not limited to, violation of the following New Jersey Statutes:

a. Theft by deception, N.J.S.A. 2C:20-4;

b. Deceptive business practices, N.J.S.A. 2c:21-7(h) by making false and misleading written statements for the purposes of obtaining

property;

c. Falsifying records or uttering any writing or record knowing that it contains a false statement or information with the purpose to deceive or injury or to conceal any wrongdoing;

d. Making false or misleading statements in any advertisement addressed to the public or to a substantial segment thereof for the purpose of promoting the purchase or sale of services, N.J.S.A. 2C:21-7e;

e. Selling, offering or exposing for sale or delivery less than the represented quantity of services, N.J.S.A. 2C:21-7b;

f. Causing or inducing another by deception as to the contents of the instrument to execute the instrument effecting or purposely to affect or likely to affect the pecuniary interest of the person, NJ.S.A. 2C:21-16;

g. Acting or offering to act as a Debt Adjuster without a license and without qualifying for any exemption from the license requirement, N.J.S.A 2C:21-19(f).

h. Conspiracy to commit the aforesaid crimes, N.J.S.A 2C:5-2 and all its subparts; and

i. Conspiring to violate any of the provisions of N.J.S.A 2C:41-2(c).

118. Defendants' actions in furtherance of racketeering include, but are not limited to:

a. Recruiting front-end and back-end affiliates to commit violation of the aforesaid crimes, which include lead generators, debt relief companies and service companies and their agents, servants and employees;

b. Marketing and soliciting materials and preparing and providing documentation and making oral representations giving the false impression the person was being represented by an attorney or licensed Debt Adjuster;

c. Conspiracy to carry out an unlawful business scheme described in this Complaint;

d. Falsely promising to provide debt relief services and accepting money from debtors in reliance on those promises;

e. Receiving or paying commissions, fees and other renumeration for unlawful services rendered by Defendants to debtors;

f. Advertising, marketing, promoting and providing contracts and other documentation which falsely create an illusion or impression that debt relief services are being or will be lawfully performed, constitute the practice of law or being performed incidental to the practice of law;

g. Collecting illegal fees, charges and costs for performing illegal services and services not permitted by law;

h. Accepting money from New Jersey residents or residents of other states doing business with the Defendants within the State of New Jersey or with connection to the State of New Jersey knowing that it is unlawful to do so;

i. Conspiracy with and amongst themselves and others to violate the provisions of N.J.SA 2C:41-2(d); and

j. Receiving income or proceeds directly from the pattern of racketeering.

119. Such pattern of behavior is indicative of the criminal and racketeering efforts of the Defendants to fraudulently profit off of New Jersey consumers.

**WHEREFORE**, as to Count Five, Plaintiff, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendants,

a. Granting class certification of the Class under R. 4:32-1(b)(3);

b. For attorney's fees, litigation expenses and costs in connection with this action;

c. For pre-judgment and post-judgment interest; and

d. For such other and further relief as the Court deems equitable and just.

## XII. Count VI
## Uniform Declaratory Judgments Law on Behalf of Herself and the Class

120. Plaintiff and members of the class repeat and reallege all prior allegations as if set forth at length herein.

121. Under the Uniform Declaratory Judgments Law ("UDJL") at N.J.S.A. 2A:16-53, Plaintiff and the putative Class members are "person[s] interested under a… written contract" and "person[s]… whose rights, status or other legal relations are affected by a statute" and therefore, they "may have determined any question of construction or validity arising under the… contract… and obtain a declaration of rights, status or other legal relations thereunder."

122. Plaintiff and the Class are entitled to a declaratory judgment that the debt adjustment and credit counseling services contracts entered with the Defendants are void and unenforceable.

123. The contract Defendants use to effectuate their unlawful business violated the NJDA, CFA, and TCCWNA as set forth above.

124. Plaintiff and the Class are entitled to a declaratory judgment that the monies obtained by Defendants against them were illegal and in violation of New Jersey law.

125. Defendants and their agents or others acting on their behalf should be

enjoined from any further action or failing to take actions that result in any effort to enforce contracts that are declared void or unenforceable.

**WHEREFORE,** as to Count Six, Plaintiff, on behalf of herself and the putative class members, hereby requests a Judgment against Defendants,

a. Granting class certification for class-wide equitable relief under R. 4:32-1(b)(2), for a declaratory judgment applicable to Plaintiff and the putative Class, pursuant to the UDJL at N.J.S.A. 2A:16-53, ruling that:

   i. The Defendants violated the NJDA by engaging as Debt Adjusters in New Jersey as a for-profit entity and without a license;

   ii. Plaintiff's, and the putative class members', contracts with Defendants were illegal and are void, in accordance with the NJDA, CFA, and TCCWNA;

   iii. That the void contracts cannot be collected upon by Defendants;

   iv. The fees charged by the Defendants were in excess of the amount allowed under the NJDA;

   v. The Defendants violated the NJDA by failing to disburse debtors' funds to creditors within 10 days of receipt;

   vi. At all relevant times hereto, Defendants did not have the legal capacity to collect or receive any principal, interest or charges under the void contracts; and

   vii. All monies collected by Defendants from consumers should be returned to consumers.

## XIII. COUNT VII
## Fraud on behalf of Herself and the Class

126. Plaintiff and members of the class repeat and reallege all prior allegations as if set forth at length herein.

127. Defendants entered into agreements where Plaintiff and Class Members would pay a monthly payment over a period of time to have Defendants settle all open collection accounts against Plaintiff, as well as for other debt relief services.

128. Defendants never intended to lawfully perform on the Contract, as Defendants never obtained the prerequisite Debt Adjuster license, pursuant to the New Jersey Debt Adjustment and Credit Counseling Act, N.J.S.A. 17:16G-1, et seq. ("NJDA").

129. Defendants omitted the material fact that they were not licensed to lawfully act as debt adjusters under the NJDA as they were unlicensed and not a non-profit organization.

130. Upon signing the Contract, Plaintiff reasonably relied on Defendants' material omission that they were unlicensed and illegally operating as Debt Adjusters.

131. Had Plaintiff known that Defendants made such a material omission, and were unable to operate as lawful Debt Adjusters, Plaintiff would have never entered into the Contract with Defendants.

132. Defendants knew they were unlicensed, as required by the NJDA.

133. Defendants omitted that fact because they knew that if Plaintiff knew they were unlicensed, Plaintiff would not have agreed to the contract.

134. Plaintiff had no reason to believe they were unlicensed since Defendants represent themselves as legitimate businesses.

135. Plaintiff and members of the Class were injured by Defendants' omissions since all the funds collected from the contracts were unlawful.

136. Further, Plaintiff and members of the Class were harmed by Defendants' failure to lawfully manage accounts, leading to severe economic damages.

**WHEREFORE,** as to Count Seven, Plaintiff and members of the class hereby request a Judgment against Defendants,

a. For compensatory damages;

b. For punitive damages;

c. For attorney's fees, litigation expenses and costs in connection with this action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just.

## XIV. COUNT VIII
## Violation of Statute Prohibiting the Unauthorized Practice of Law as to Defendants on behalf of Herself and the Class

137. Plaintiff and members of the class repeat and reallege all prior allegations as if set forth at length herein.

138. Defendants have engaged in the unauthorized practice of law.

139. Defendants are liable for statutory and actual damages and other relief

BER-L-005244-25 08/04/2025 9:25:09 PM Pg 32 of 34 Trans ID: LCV20252176487

allowed by N.J.S.A. 2C:21-22a.

**WHEREFORE**, as to Count Eight, Plaintiff, on behalf of herself and the Class, hereby request a Judgment against Defendants:

a. Granting class certification of the Subclass under R. 4:32-1(b)(3);

b. An award of damages, including $1,000 minimum damages to each class member, and other relief allowed by N.J.S.A. 2C:21-22a to the Class;

c. A money judgment of all amounts collected from the Class as a result of Defendants' unauthorized practice of law, including treble damages;

d. For attorney's fees, litigation expenses and costs in connection with this action;

e. For pre-judgment and post-judgment interest; and

f. For such other and further relief as the Court deems equitable and just.

## XV. Jury Demand

Plaintiff demands a trial by jury on all issues subject to trial by jury.

## XVI. Demand For Discovery Of Insurance Information

Plaintiff hereby demands discovery of any and all insurance agreements or policies which may be available to satisfy part of any judgment rendered in this matter against any party in favor of Plaintiff. For each insurance agreement or policy available to each party, please provide the following: (A) The name of the insurance company; (B) The named insured; (C) The names of any additional insured; (D) The policy period; and (E) The limits of coverage. Please produce this

information within thirty days.

## XVII. NOTICE TO ATTORNEY GENERAL

A copy of this Complaint will be emailed to the Attorney General of the State of New Jersey within 24 hours after the filing with the Court, pursuant to N.J.S.A. 56:8-20.

## XVIII. DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Yongmoon Kim, Esq. is designated as trial counsel for Marie Yolene Dumay-Mellon.

## XIX. CERTIFICATION

Pursuant to Rule 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding and that no other action or arbitration proceeding is contemplated. I further certify that I know of no party who should be joined in this action at this time.

I hereby certify that pursuant to Rule 1:38-7: All confidential identifiers of the parties to this action have been redacted from all documents or pleadings submitted to the Court.

KIM LAW FIRM LLC

*/s/ Yongmoon Kim*
Yongmoon Kim, Esq.

DATED: August 4, 2025

Panamerican Consulting

# Validation Program
## Enrollment Packet

# EXHIBIT A


ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

# Welcome to Panamerican Consulting's Validation Program

Thank you for the opportunity to provide you this outstanding service. A tremendous amount of expertise has been utilized to develop this service and we are confident that you and your family will have a successful outcome. Our staff consists of only the most experienced professionals in the industry. You will find our entire staff to be personal, knowledgeable, hardworking and efficient.

While Panamerican Consulting does not settle, consolidate, engage in credit repair or provide credit card counseling, we can help you verify the validity of your unsecured debts by using the rules and regulations of the Fair Debt Collection Practices Act (FDCPA). It is your right to request verification of debts from third-party collectors such as collection agencies and collection attorneys. The validation process can be laborious and tedious, but you have nothing to fear with our expertise on your side.

We understand what you are going through and want to help as you manage your way through financial hardship. We can be your source of guidance, helping you avoid the pitfalls that can further jeopardize your financial base, while directing you to make the proper decisions in times of uncertainty.

## Our Solution

***Step One: Recognize and Accept the Problem***

If you have negative cash flow (i.e., your expenses exceed your income) or you would like to save more than you are currently able to, take a close look at what money you have going out. Can you get a part- time job? Rent out a room in your house? Cut back on dining out? Skip the daily $4 latte? Get a cheaper cable package or cut your land-line phone? Increasing income can be difficult, but most people have some expenses they can trim. Assess your circumstances honestly and decide what is a necessity and what is not.

***Step Two: Identify a Solution***

Identifying a clear and achievable solution is a crucial part of anyone's financial plan. There are many options available to consumers facing financial difficulty. Our specialty is providing debt validation services that allow consumers to verify unsecured debts when third-party creditors make collection attempts. Panamerican Consulting's Validation Program is the perfect plan for many individuals; thoughtfully determine if it is the perfect solution for you and your family.

***Step Three: Take Action***

Panamerican Consulting can help you achieve your financial goals! Using our pro-active Validation Program, enrolled clients will enjoy superior care and security of a performance based validation program. We will earn your trust and confidence by successfully performing our validation services and aim for the best results possible.

Sincerely,

*Panamerican Consulting*

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

**Applicant & Co-Applicant Information**

| | | | |
|---|---|---|---|
| Applicant's Name: | Marie Dumay Mellon | Co-Applicant's Name: | |
| Mailing Address: | REDACTED | Mailing Address: | |
| City: | REDACTED | City: | |
| State: | NJ | State: | |
| Zip Code: | REDACTED | Zip Code: | |
| Home Phone: | | Home Phone: | |
| Cell Phone: | REDACTED | Cell Phone: | |
| Work Phone: | | Work Phone: | |
| E-Mail: | REDACTED | E-mail: | |
| Date of Birth: | REDACTED | Date of Birth: | |
| Social Security: | REDACTED | Social Security: | |

Marie Dumay Mellon

Applicant's Signature

8/3/2021

Date

Co-Applicant's Signature

Date

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

## List of Enrolled Accounts

| Creditor | Account # | Amount Owed |
|---|---|---|
| AMEX/DSNB | REDACTED | $1,770.00 |
| SYNCB/CARE CREDIT | REDACTED | $6,564.00 |
| | | **$8,334.00** |

Applicant Initial: MDM

Co-Applicant Initials: ________

# EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

## Estimated Terms of Program

| | |
|---|---|
| Total amount of debt enrolled: | REDACTED |
| My/Our Validation Program Cost: | REDACTED |
| Program term: (months) | REDAC |
| My/Our monthly payments to Panamerican Consulting: | REDACTED |
| First payment due date: | REDACTED |
| I/We can afford the new monthly payments made to Panamerican Consulting: | YES |

**Additional Comments:**

Marie Dumay Mellon

Applicant's Signature

8/3/2021

Date

Co-Applicant's Signature

Date

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

**Debt Validation Agreement**

This Debt Validation Agreement ("Agreement") is made between PANAMERICAN CONSULTING, LLC, located at 3843 S. Bristol Street #308, Santa Ana, CA 92704 ("Company") and Marie Dumay Mellon , ("Client"). The parties agree as follows:

**SERVICES**

Company agrees to provide debt validation services to Client under the terms and conditions of this Agreement (the "Service"). The Service consists of written communications with creditors of unsecured debt, on behalf of Client, requesting validation of the debt. Client expressly grants permission for Company to contact its creditors and collectors to validate debts on behalf of Client. Company will keep confidential the personal financial information provided by Client, except as is necessary to provide the Service. The Services will be provided until the Agreement is terminated pursuant to Section 5 (TERM).

**CLIENT OBLIGATIONS**

Client will perform the following obligations:

1. Client shall inform Company of any additional debtor, co-signer or guarantor of any of the Program Debt.
2. The list of creditors and associated debts ("Accounts") provided in the enrollment package is the complete list of the Accounts to be validated by the Company. All Accounts must fall within Company "unsecured debt" guidelines. A listing of all such Accounts is provided in 'List of Enrolled Accounts' page. No secured debts or federal student loans will be accepted into the program. Client understands that Company reserves the right to refuse enrollment of any Account into the program. Adding an Account will require a written amendment to this Agreement. All information provided by Client must be truthful and accurate. Company is under no obligation to verify information supplied by client.
3. Client will forward all correspondence from creditors to Company, including collection letters.
4. Client will timely respond to all calls and requests for documentation from the Company and will promptly advise Company of any change in address or telephone number and/or email address.
5. Company will develop and Client will follow the Payment Schedule, agreed upon by client in this Agreement. This schedule outlines all funds required for payment of Service Fees.
6. Client shall make no further charges to any Account enrolled in the program. If Client incurs additional charges on any Account, Company has the right to terminate the Agreement.
7. Client shall make all payments in accordance with the Payment Schedule. No payment reschedule shall be authorized within 5 days of the payment date.

**COMPENSATION**

The Service will be deemed complete as to an Account and compensation payable by Client to Company ("Service Fee"), when either (i) a request for validation of an Account has been sent or (ii) a collector acknowledges in writing that it does not have sufficient validation of the Account. Upon Service completion of an Account, Client shall pay Company the agreed upon percentage of the total amount of the account. Upon Service completion of an Account the Service Fee on the Account shall be immediately due and Client shall pay the Service Fee for that Account. Client authorizes any third party provider selected by Client to initiate the debit of Client's checking or saving account, in accordance with the Electronic Payment Authorization, for payment of the earned Service Fee upon Service completion of an Account. The Electronic Payment Authorization is incorporated herein by reference.

Applicant Initial: MDM

Co-Applicant Initial: ________

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

**TERM**

This Agreement will terminate upon the conclusion of the Statue of Limitations in Client's state, or upon the lack of validation of each Account, or upon termination by either party as provided below. Client has a limited right of rescission, as provided for below.

**TERMINATION AND CANCELLATION POLICY**

CLIENT MAY TERMINATE AND CANCEL THIS AGREEMENT ANYTIME WRITTEN NOTICE TO COMPANY FOR ANY REASON OR NO REASON FOLLOWING WRITTEN NOTICE TO COMPANY. COMPANY MAY TERMINATE THIS AGREEMENT ON 5 DAY WRITTEN NOTICE TO CLIENT IF CLIENT FAILS TO PROMPTLY RETURN DOCUMENTS, FAILS TO PROMPTLY RESPOND TO COMMUNICATIONS FROM COMPANY, FAILS TO SET ASIDE MONEY IN ACCORDANCE WITH THE SAVINGS SCHEDULE OR BREACHS ANY OTHER PROVISION OF THIS AGREEMENT.

**ASSIGNMENT**

Company may assign the Services to be provided under this Agreement to any qualified third party in its discretion without the prior consent or notification of Client.

**ACKNOWLEDGMENTS AND DISCLAIMERS**

Client acknowledges and agrees that:

1. The outcome of the Service and whether the validation of the debt is provided is uncertain and cannot be guaranteed. Client understands that each situation is unique and that results will vary.
2. Creditors may continue collection efforts while enrolled in the program, including initiating legal action. Company cannot stop these collection efforts. In the event a creditor or debt collector pursues legal remedies against Client, neither this Agreement nor the Service includes legal representation. If court action is initiated against Client, the Client is responsible for responding or arranging for legal representation. Client understands and acknowledges that the debt accounts are owed and outstanding; yet they are rendered non-collectible due to lack of validation or time-barred due to Statute of Limitations in Client's state.
3. The enrollment of Accounts in this program may have an adverse effect on Client's credit rating. The Company is not responsible for the actions of the creditors in response to request for validation of debt. The Service does not include the modification, correction or improvement of Client's credit reports. Company cannot guarantee how credit reporting agencies will report a failure to validate.
4. If a debt account is found to be valid, Client has the option to remove that account from Company's program and enroll that account into a Debt Settlement program, Credit Repair, Debt Management Program, file bankruptcy and/or do nothing.
5. If you fail to make the minimum monthly payments to creditors while participating in the program, the Account will likely incur late fees, interest and other penalties and the account balance will increase. Client is responsible for payment of the Account. The Service does not involve the settlement of the Accounts. Client acknowledges that Company has not instructed client to cease making payments on any Account or Accounts.
6. The Service does not include any tax representation, such as audit and verification, debt retirement, or Internal Revenue Service offer and compromise.
7. The discharge of indebtedness in excess of $600.00 is considered taxable income, which may be reported by a creditor; Client should seek the advice of a tax professional.
8. All inbound and outbound calls between Company and Client may be recorded for quality assurance.
9. Client consents to do business electronically with Company. Client understands that electronic transactions, not limited to emails, are inherently unsecure and that both Client and Company will take all reasonable steps to maintain the Privacy of the information shared between the parties. Client consents to receive information and documents relating to this Agreement and Company services via electronic mail, text message, facsimile, voicemail, and any other common electronic means. Client understands that all costs associated with the receipt, review and use of such electronic communications shall be those of Client, such as maintaining access to the Internet or paying for text messages. Client consents to receive updates and documents relating to this Agreement and the services and programs offered by Company via prerecorded voice messages, text/SMS messages, and/or through the use of an automated dialing system. Client may contact Company at any time to opt-out of receiving updates, new programs or offers through prerecorded or autodialed messages. Consent to this section does not bind Client to any future purchases of new services or offers.

EXHIBIT A

Applicant Initial: MDM

Co-Applicant Initial: ______



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

**LIMITATION ON REMEDY AND DAMAGES**

DESPITE ANYTHING TO THE CONTRARY IN THIS AGREEMENT OR OTHERWISE, NEITHER PARTY WILL BE LIABLE WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT UNDER ANY CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR OTHER LEGAL OR EQUITABLE THEORY FOR ANY INCIDENTAL, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES, EVEN IF THAT PARTY HAS BEEN NOTIFIED OF THE POSSIBILITY OR LIKELIHOOD OF SUCH DAMAGES OCCURRING, AND WHETHER SUCH LIABILITY IS BASED ON CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR OTHERWISE. THE LIMITATIONS OF THIS SECTION SHALL APPLY NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**ARBITRATION**

In the event of any controversy, claim or dispute between the parties arising out of or relating to this agreement or the breach, termination, enforcement, interpretation, consionability or validity thereof, including any determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Orange County, California or in the county in which the consumer resides, in accordance with the Laws of the State of California for agreements to be made in and to be performed in California.The parties agree that the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to its rules and procedures and an arbitrator shall be selected by the AAA. The arbitrator shall be neutral and independent and shall comply with the AAA code of ethics. The award rendered by the arbitrator shall be final and shall not be subject to vacation or modification. Judgment on the award made by the arbitrator may be entered in any court having jurisdiction over the parties. If either party fails to comply with the arbitrator's award, the injured party may petition the circuit court for enforcement. The parties agree that either party may bring claims against the other only in his/her or its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. Further, the parties agree that the arbitrator may not consolidate proceedings of more than one person's claims, and may not otherwise preside over any form of representative or class proceeding. The parties shall share the cost (not attorney's fees) of arbitration equally. If the consumer's share of the cost (not fees) is greater than $2,000.00 (Two-thousand dollars), the company will pay the consumers share of costs in excess of that amount. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award. Binding Arbitration means that both parties give up the right to a trial by a jury. It also means that both parties give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can or may be appealed. It also means that discovery may be severely limited by the arbitrator.This section and the arbitration requirement shall survive any termination.

**CHOICE OF LAW**

The laws of the State of California will govern this agreement without regard to the conflict of laws provisions thereof.

**INTEGRATION**

This Agreement and the Schedule are the complete and exclusive statement of the agreement and supersedes any proposal, prior agreement, oral or written, and any other communications relating to the settlement of debt.

Applicant Initial: MDM

Co-Applicant Initial: ________

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

**AMENDMENT**

This Agreement may not be changed, amended, terminated, rescinded or discharged, except by a writing document executed by the parties hereto and no waiver of any of the provisions or conditions of this Agreement or any of the rights of a party hereto shall be effective or binding unless such waiver shall be in writing and signed by the party claimed to have given such waiver.

**SEVERABILITY**

If any of the above provisions are held to be invalid or unenforceable, the remaining provisions will not be affected.

**CONSENT TO OBTAIN CREDIT REPORT**

I, Marie Dumay Mellon , authorize Company to obtain and review my consumer credit report. Company will use the consumer credit report to verify personal credit information. Upon request, Company will provide Client(s) with the name and address of the Consumer Reporting Agency contacted to supply the report. I understand that credit inquiries may have the potential to impact my credit score. It is understood that a copy of this form will also serve as authorization.

**NOTICE OF RIGHT TO RESCIND OR CANCEL:** CLIENT MAY RESCIND OR CANCEL THIS AGREEMENT WITHOUT PENALTY OR OBLIGATION AT ANY TIME BEFORE MIDNIGHT OF THE FIFTH BUSINESS DAY AFTER YOU HAVE SIGNED THE AGREEMENT. IN ORDER TO RESCIND OR CANCEL, YOU MUST PROVIDE TIMELY WRITTEN NOTICE TO COMPANY.

Marie Dumay Mellon — 8/3/2021

Applicant's Signature — Date

Co-Applicant's Signature — Date

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

# Authorization Letter to Communicate with Creditors and Collection Agencies

I/We Marie Dumay Mellon , expressly grant permission to Panamerican Consulting, all its agents, representatives and its assigns, solely for the purpose of Panamerican Consulting to perform its obligations and the following actions on my/our behal

I/We instruct and authorize Panamerican Consulting and request that recipient comply with such instructions:

1. This letter serves as notice to you and your company to immediately cease and desist all contact and communication with me regarding the collection of an alleged debt and all related matters. That all future communication, including but not limited to communication via telephone, mail correspondence, electronic mail, or facsimile be directed to Panamerican Consulting. This request is made pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692.

**PANAMERICAN CONSULTING**

**ATTN: DOCUMENT PROCESSING**

**3843 S. BRISTOL ST. #308**

**SANTA ANA, CA 92704**

2. To communicate with banks, creditors, financial institutions, credit bureaus, collection agencies, or their agents and assigns, and all other entities and individuals involved with my/our debts and credit issues.

3. To obtain records, debt validations and support for the debts allegedly owed by the undersigned. Panamerican Consulting is authorized to request and receive confidential credit and account information from creditors, credit reporting agencies, debt collectors and other third parties involved with my/our debt and credit issues.

I further authorize Panamerican Consulting to release a copy of this Authorization Letter to any of the above-described parties.

| | |
|---|---|
| Applicant's Name: Marie Dumay Mellon | Co-Applicant's Name: |
| Mailing Address: REDACTED | Mailing Address: |
| City: REDACTED | City: |
| State: NJ | State: |
| Zip Code: REDACTED | Zip Code: |
| Social Security No.: REDACTED | Social Security No.: |

Marie Dumay Mellon
Applicant's Signature — 8/3/2021 Date

Co-Applicant's Signature — 8/3/2021 Date

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

# Electronic Funds Transfer (EFT) Authorization to Debit Bank Account

Account Owner Name Marie Dumay Mellon

Social Security Number REDACTED Date of Birth REDACTED

Address REDACTED City REDACTED State NJ Zip REDACTED

Mobile Phone #: REDACTED Bank Name REDACTED

Routing Number REDACTED Account Number REDACTED

Total Amount of Debit 254.87 Date of First Draft Aug 30, 2021 Acct Type: Checking

**Schedule of Fees and Charges**

| | |
|---|---|
| Monthly Banking Fee: | $9.75 |
| Returned ACH?EFT (NSF) Fee: | $6.50 |
| Chargeback/Late Return Fee: | $25 |

***"EPPS-Ph# 800-215-3484"*** **will appear on your bank statement in reference to your debit**

I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by **EPPS, LLC** and/or its successors for the purpose of accumulating funds to pay for such goods and services as I so direct **EPPS, LLC** to perform. This application is subject to Bank's customer identification program, as required by the USA PATRIOT ACT and other applicable laws, and accordingly, I hereby represent that the above information is true and complete to the best of my knowledge and belief. The bank account information provided above may be subject to account validation processes to include but are not limited to electronic account verification and $0.01 account validation micro-debit.

I hereby authorize Bank, directly or through **EPPS, LLC**, and/or its service provider to administer the Account on my behalf by (a) periodically transferring and depositing funds to the Account pursuant to the authorization provided below, and (b) periodically disbursing funds from the Account pursuant to instructions that I may give from time to time. In this regard, I hereby authorize payments from the Account of the fees and charges provided for in this application and agreement. I hereby grant permission for Bank to share information regarding the Account with **EPPS, LLC** and any other service provider to facilitate the transactions I may initiate that involve the Account, and with any other party that is essential to the administration of the Account on my behalf.

This authorization shall remain in full force and effect until I give written termination notice to **EPPS, LLC**, that affords it a reasonable period of time (at least 10 days) to act on it. Any such notice, and any other written notice that is provided for in this Application or the Agreement, shall be sent to **EPPS, LLC** at the address set forth in this Agreement.

Written notice that is provided for in this Application or the Agreement, shall be sent to EPPS, LLC at the address set forth in this Agreement.

***"EPPS-Ph# 800-215-3484"*** **Will Appear on Your Bank Statement**

Account Holder's Signature *Marie Dumay Mellon* Date Aug 03, 2021

# EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

## Privacy Policy

Panamerican Consulting, LLC (hereinafter "Company") is dedicated to protecting your privacy and providing you with the highest level of service. This Policy explains what Company does to keep information about you private and secure. This Policy covers only information that you provide to Company or that it obtains about you from companies that you have chosen to do business with. Please read this Policy carefully and contact us if you have any questions.

**Personal Information We Collect**

The personal information we collect about you comes from the following sources:

- Information we receive from you, such as your name, address, and telephone number, or other information that you provide to us over the phone or in documents or applications,
- Information about your transactions, such as your account balances with your creditors, payment histories, account activity, and all other information that may be contained in your credit card statements or other reports relating to your debt, and
- Information we receive from consumer reporting agencies and other sources, such as your credit bureau reports, collection agency reports or other communications, and other information relating to your payment histories, creditworthiness, annual income, or ability to satisfy your obligations.

We reserve the right to, and will, sell or transfer your personal information to third parties for any purpose in our sole discretion. We prohibit the sale or transfer of personal information to non-affiliated entities for their use without giving you the opportunity to opt-out. We may disclose such information in order to effect or carry out any transaction that you have requested of us or as necessary to complete our contractual obligations with you. We may also share your information with service providers that perform business operations for us, companies that act on our behalf to market our services, or others only as permitted or required by law, such as to protect against fraud or in response to a subpoena. We may also share or transfer our information in the event we transfer or sell your account or our business assets to another provider.

By carrying out those services, we may disclose your information, as we see fit and as permitted by law, to your creditors, credit card companies, collection agencies, banks, and other entities and individuals specifically necessary to effect, administer and perform our services.

**Your Choices/Opt-out**

We provide you the opportunity to 'opt-out' of having your personally identifiable information used for certain purposes. By providing information to Company you are consenting to the collection, use and disclosure of such personal information in the manner described in this privacy policy. We provide you the opportunity to withdraw your consent when such information is collected.

Such consent may be withdrawn by calling the telephone number provided below or may be done in writing/email and sent to our customer service department at the following physical address or email address:

Panamerican Consulting, LLC
3843 S. Bristol St, #308
Santa Ana, CA 92704
E-mail: Contact@panamconsulting.com
Phone: 800-745-8360

Initial: MDM

Co-Applicant Initial: ________

EXHIBIT A

Panamerican Consulting

**How We Protect Your Information**

We train our employees to protect all customer information. We maintain physical, electronic and procedural controls that comply with government standards. We authorize our employees, agents and contractors to get information about you only when they need it to do their work with us. You can help to maintain the security of your online transactions by not sharing your personal information or password with anyone. Remember, no method of transmission over the Internet, or method of electronic storage, is 100% secure.

This Policy applies to current and former customers. If you have any questions, please contact Panamerican Consulting, LLC, at 3843 S. Bristol St, #308, Santa Ana, CA 92704.

Marie Dumay Mellow — 8/3/2021

Applicant's Signature — Date

Co-Applicant's Signature — Date

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

**Complaint Policy**

Our goal at Panamerican Consulting, LLC is to provide exceptional service to our clients. While every effort is taken to ensure we treat our clients in a fair, courteous, and honest manner, we may occasionally make a mistake.

We believe that our clients have the right to complain and the right to have their complaints addressed. We also believe that a successful organization must be willing to evolve in an effort to meet the needs of its clients. Therefore, we have established a complaint process for clients who are unsatisfied with the service or treatment they receive.

**How to Complain**

In the event you are unsatisfied with our service, please initially direct your comment or complaint with the employee or team responsible. If the individual employee cannot resolve the matter, we will engage the relevant manager or Director to try and resolve matters.

We always attempt to resolve your concerns at the first point of contact. However, if you are not satisfied with the resolution, you may then notify our Compliance Officer in writing at:

1. **Contact@panamconsulting.com or**
2. **Panamerican Consulting**
   **ATTN: Compliance Dept.**
   **3843 S. Bristol St. #308**
   **Santa Ana, CA 92704**

Please include the following in your written correspondence:

1. A clear description of the complaint and any suggestions you may have that would resolve your grievance.
2. Details of any relevant information relating to any contacts you may previously have had with Panamerican Consulting, LLC on this subject.
3. Whether it is an original complaint, or a follow-up to a reply you were not satisfied with.
4. Your complete contact information (including full postal address, telephone number, and email address) and your date of birth (for verification purposes).

**What to Expect**

We strive to resolve all complaints as quickly and efficiently as possible. You can expect to receive a response from us within 10 business days after submitting your complaint. If your case is particularly complex and cannot be resolved within 10 days, we will provide you with an estimated time in which you should expect to receive a response.

EXHIBIT A

E Signature Completion Certificate

clixsign.

# Your Document Was Successfully Signed!

Congratulations, your document(s) was successfully signed. Please find details below related to your e-signature submission.

## Signing Details

Document ID
REDACTED

Document Title
PANAM ENROLLMENT PACKET

Sender IP Address
REDACTED

Number Of Signers
1

Signer Email
REDACTED

Signer IP Address
REDACTED

Timestamp
2021-08-03T15:20:37-05:00

Document MD5 Hash
REDACTED

## Document Audit

- ✓ Sent at 2021-08-03T15:07:26-05:00 from IPREDACTED
- ✓ Delivered to REDACTED at 2021-08-03T15:17:16-05:00 from REDACTED
- ✓ Adopted Signature at 2021-08-03T15:17:54-05:00 from REDACTED
- ✓ Completed Signing at 2021-08-03T15:20:37-05:00 from REDACTED
- ✓ PDF Generated at 2021-08-03T15:20:37-05:00

Sending Agent
Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/92.0.4515.107 Safari/537.36 Edg/92.0.902.62

# EXHIBIT A

Yongmoon Kim (NJ Atty. ID #026122011)
ykim@kimlf.com
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
*Attorneys for Plaintiff Marie Yolene Dumay-Mellon*

| | |
|---|---|
| MARIE YOLENE DUMAY-MELLON, *on behalf of herself and those similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>PANAMERICAN CONSULTING, LLC; EPPS, LLC; and JOHN DOES 1 to 10,<br><br>Defendants. | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY**<br><br>Docket No. BER-L-<br><br>Civil Action<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff, Marie Yolene Dumay-Mellon ("Plaintiff"), residing in New Jersey, on behalf of herself and others similarly situated, by way of Complaint against Defendant Panamerican Consulting, LLC ("Panamerican"), Defendant EPPS, LLC a/k/a Electronic Payment Process Systems, LLC ("EPPS"), and John Does 1 to 10 (collectively, "Defendants"), states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction to entertain this matter.

2. Venue in this action is proper in Bergen County because Defendant

regularly conducts business here.

## II. INTRODUCTION

3. Defendants have created and are engaged in a plan or scheme to defraud the residents of the State of New Jersey and other states by performing unlawful debt adjustment activities in the State of New Jersey. Defendants Panamerican and EPPS, and its individual members, recruits, employs, and partners with both front-end lead generators and back-end service companies and financial institutions in New Jersey and other states to provide debt adjustment services, creating the impression that these services are to be performed or provided lawfully. Defendants never obtained the prerequisite Debt Adjuster license, pursuant to the New Jersey Debt Adjustment and Credit Counseling Act, N.J.S.A. 17:16G-1, *et seq*. ("NJDA").

4. This is a putative class action arising from Defendants' fraudulent and unlawful business practice of contracting with consumers with the pretense that Defendants would settle the debts of consumers and unlawfully collecting funds from consumer while failing to timely disburse payments to creditors.

5. This unlawful plan or scheme is in violation of the NJDA, since, amongst other things, Defendants Panamerican and EPPS are for-profit entities that lack the requisite licenses to perform these services.

6. Further, Defendants charged Plaintiff and putative class members fees

in excess of the maximum amount allowed by the NJDA.

7. Defendants failed to disburse all the funds it received to creditors from debtors within 10 days of receipt, as required by the NJDA.

8. Defendants' representations that they were authorized to be Debt Adjusters in New Jersey while collecting money from consumers is a fraudulent business practice, subject to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("CFA").

9. Defendants' omission that they could not legally act as Debt Adjusters in New Jersey while collecting money from consumers to act as Debt Adjusters is a fraudulent business practice, subject to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("CFA").

10. Additionally, the unauthorized practice of law and the violation of the NJDA constitute crimes under New Jersey law and are a violation of the New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1, et seq. ("RICO"), as well as other laws, such as the Truth-In-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to - 18 ("TCCWNA").

11. Plaintiff and the putative class members are New Jersey consumers against whom Defendants have unlawfully induced payments as they misrepresented Defendants' legal statuses as a Debt Adjusters.

12. Defendants violated the Telemarketing and Consumer Fraud and

Abuse Prevention Act and its implementing regulations, 15 U.S.C. 6101, *et seq*., and the Federal Trade Commission Telemarketing Sales Rule, 16 C.F.R. 310.1, *et seq*., ("TSR").

13. Thus, Plaintiff brings this action on behalf of herself and a class of other New Jersey consumers who paid Defendants for debt adjustment and other credit counseling services when Defendants were not properly licensed pursuant to New Jersey law.

14. Additionally, Plaintiff seeks declaratory judgment under the Uniform Declaratory Judgments Law ("UDJL") at N.J.S.A. 2A:16-53, monetary damages on behalf of a Class of consumers from whom Defendants charged for debt adjustment and credit counseling services, including recovery of damages under the NJDA, treble damages under the CFA and RICO, penalties and damages from the TCCWNA, and disgorgement based on unjust enrichment.

15. The claims of Plaintiff and the proposed Class are directly related to Defendants' unlicensed and unlawful business practice and would not exist but for the actions voluntarily conducted by Defendants.

## III. PARTIES

16. Plaintiff Marie Yolene Dumay-Mellon, a New Jersey resident, is a natural person, who resides at 1505 McCandless Street, Linden, NJ 07036.

17. At all times relevant to this lawsuit, Plaintiff was a citizen of the State

of New Jersey.

18. Defendant Panamerican Consulting, LLC is a for-profit limited liability company. Upon information and belief, and according to the contract entered between Panamerican and Plaintiff, Panamerican is headquartered at 3843 South Bristol Street, #308, Santa Ana, CA 92704.

19. Panamerican is in the business of allegedly entering into agreements with consumers under the guise of providing debt validation services; in reality, however, these agreements constitute debt adjustment services, wherein Panamerican undertakes to settle and contest the consumer's debts in exchange for a monthly fee. Panamerican allegedly generates profit by collecting fees without providing any amount of credit assistance to the consumers and without obtaining the license to be a Debt Adjuster.

20. Defendant EPPS, LLC a/k/a Electronic Payment Process Systems, LLC is a for-profit limited liability company incorporated in Nevada on November 23, 2009, with its address listed as P.O. Box 27740, Las Vegas, NV 89126. Its registered agent is Nevada Corporate Headquarters, Inc., located at 4730 S. Fort Apache Road, Suite 300, Las Vegas, NV 89174.

21. EPPS is in the business of providing payment processing services for unlicensed Debt Adjusters, like Panamerican, and by withdrawing funds from consumers which are later distributed to Panamerican fraudulently, and EPPS

retains a fee for their service.

22. Defendants John Does 1 to 10 are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to the law, acted consistent with and oversaw policies and procedures used by the employees of Defendants that are the subject of this Complaint. Those defendants personally control the illegal acts, policies, and practices utilized by Defendants and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint. Those fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

23. Some or all of John Does 1-10 set the policies and practices complained of herein.

24. Some or all of John Does 1-10 were actively engaged in the practices complained of herein.

## IV. FACTUAL ALLEGATIONS

### A. Facts Specific to the Plaintiff

25. Some time around or before August 2021, Panamerican called Plaintiff offering debt consolidation services.

26. On or about August 3, 2021, Plaintiff and Defendants entered into an

agreement wherein Defendants would negotiate and settle debts on behalf of Plaintiff and pay off her debts with funds taken from Plaintiff.

27. The Contract contained an authorization form from EPPS for the withdrawal of funds. *See* Exhibit A, at p.11.

28. The Contract detailed the accounts that Plaintiff was aware of and specifically sought Defendants' services for. *See* Exhibit A, at p.4.

29. The Contract also contained a payment schedule, whereby Plaintiff was to deposit $254.87 into Plaintiff's account with a bank selected by EPPS each month for 17 months. *See* Exhibit A, at p. 5. The first payment occurred on August 30, 2021.

30. Plaintiff made payments pursuant to the Contract up until January of 2023, where she paid a total of approximately $4,332.79 while receiving no benefits or services from Defendants.

31. To Plaintiff's surprise, on May 8, 2023, one of Plaintiff's creditors initiated an action against Plaintiff alleging Plaintiff failed to make payments on her debt.

32. Plaintiff learned that despite timely depositing money with Defendants, Defendants allowed Plaintiff's accounts to be delinquent causing Plaintiff great financial harm.

33. Plaintiff made payments to Defendants pursuant to the Contract for 17

months, while receiving no benefits or services from Defendants.

34. Defendants never disbursed the funds with which Plaintiff provided them.

35. Even if Defendants were properly licensed as non-profit debt adjusters, Defendants charged Plaintiff fees in excess of the amount allowed by the NJDA.

**B. Facts Related to New Jersey Consumers**

36. Each contract Defendants entered into with New Jersey consumers for debt adjustment and credit counseling services was made in violation of New Jersey law, because Defendants, as Debt Adjusters, collected funds while operating as a for-profit entity, required consumers to pay illegally high fees, and because Defendants were not licensed as required by the NJDA.

37. Therefore, since the contracts were made in violation of the NJDA, the contracts entered between Defendants and consumers are unconscionable, void, and unenforceable.

38. Thus, these contracts were void ab initio.

39. These contracts contained numerous unconscionable and unlawful provisions.

40. Defendants attempted to collect payments on these illegal contracts.

41. New Jersey consumers made payments to Defendants because

Defendants misrepresented that they were lawfully allowed to serve as Debt Adjusters in New Jersey.

42. Defendants acted with unclean hands when they took actions in violation of New Jersey law and are not entitled to any equitable relief.

43. Upon information and belief, Defendants charged fees in excess of the amount allowed by New Jersey law.

44. Defendants, as a matter of policy, would not disburse to the appropriate creditors all funds received from consumers within 10 days of receipt of those funds, in violation of the NJDA.

45. Defendants acted in concert and as a scheme to avoid being licensed under the NJDA and to collect monies from consumers based on a false representation.

46. Panamerican agreed to handle legal matters on behalf of Plaintiff and New Jersey consumers. This includes negotiating settlements with creditors and debt collectors and providing legal advice regarding debt defense and taking legal action against creditors and debt collectors.

## V. CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 4:32 of the New Jersey Rules of Court.

48. Subject to discovery and further investigation which may require Plaintiff to modify the following class definition at the time Plaintiff moves for class certification, Plaintiff seeks certification of a Class, defined as follows:

> **Class**: All natural persons with addresses in the State of New Jersey who (i) entered into contracts/agreements for debt adjustment, and ancillary, services from Defendants, or (ii) made payment(s) to Defendants, in connection with or relating to debt adjustment, and ancillary, services.
>
> All natural persons with addresses in the State of New Jersey who (i) entered into contracts/agreements for debt adjustment, and ancillary, services from Defendants, or (ii) made payment(s) to Defendants, in connection with or relating to debt adjustment, and ancillary, services, and (3) initiated or received an interstate call from any Defendant.

49. Plaintiff seeks damages and declaratory relief on behalf of the class, as well as attorney's fees and costs to the extent allowed by law.

50. Plaintiff seeks to recover statutory damages, punitive damages, actual damages, restitution, and attorney's fees and costs on behalf of herself and all Class members under the claims asserted herein.

51. The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

52. There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals, including but not limited to:

a. Whether Defendants are each a "person" subject to the requirements of the CFA.

b. Whether Defendants are "sellers" under the TCCWNA.

c. Whether Defendants violated the NJDA when they sold debt adjustment and credit counseling service contracts to New Jersey Consumers, and whether such contracts violated a clearly established legal right.

d. Whether the Defendants are for-profit entities providing debt adjustment and credit counselling services in violation of the NJDA.

e. Whether the Defendants violated the NJDA in the fees they charged, and the Defendants' failure to timely distribute payments to creditors.

f. Whether Defendants' business practices are illegal in New Jersey.

g. Whether, and to what extent, Defendants conduct constituted criminal violations and/or predicate acts subject to RICO.

h. Whether Defendants' failure to obtain the valid license pursuant to the NJDA while contracting with Plaintiff and those similarly situated was made in connection with the sale of merchandise within the meaning of the CFA at N.J.S.A. 56:8-2.

i. Whether Defendants' failure to obtain the valid license pursuant to the NJDA while contracting with Plaintiff and those similarly situated constitutes an unconscionable commercial practice, deception, fraud, false promise pretense and/or misrepresentation in violation of the CFA at N.J.S.A.56:8-2

j. Whether Defendants' charging illegal fees and fees in excess of the amount allowed by the NJDA to Plaintiff and those similarly situated, and failing to disburse funds within 10 days of receipt as required by the NJDA constitutes an unconscionable commercial practice, deception, fraud, false promise pretense and/or

misrepresentation in violation of the CFA at N.J.S.A.56:8-2

k. The amounts that the Class are entitled to recover from Defendants for damages, disgorgement, and restitution.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort, and expense by avoiding thousands of individual suits that will be based on the same legal theories that can be resolved in a single proceeding.

54. Plaintiff's claims are typical of the claims of the members of the Class.

55. The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members.

56. Plaintiff does not have interests antagonistic to those of the Class.

57. Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

58. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would

establish incompatible standards of conduct for Defendants in this action or the prosecution of separate actions by individual members of the Class would create the risk that adjudications with respect to individual members of the Class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

59. Plaintiff does not anticipate any difficulty in the management of this litigation.

60. Plaintiff's counsel includes counsel who has tried similar claims for a class before a jury.

## VI. Causes of Action

## VII. Count I

**New Jersey Debt Adjustment and Credit Counseling Act on Behalf of Herself and the Class**

61. Plaintiff and members of the class repeat and reallege all allegations as if set forth at length herein.

62. Defendants are "Debt Adjusters" as defined under the NJDA. N.J.S.A. § 17:16G- 1(c)(1).

63. Defendants conducted business as Debt Adjusters but are not a nonprofit organization, in violation of the NJDA. N.J.S.A. § 17:16G-2(a).

64. Even if Defendants were a nonprofit organization, they failed to obtain a license and acted as a debt adjuster in violation of the NJDA. N.J.S.A. § 17:16G-2(b).

65. In all their communications with Plaintiff and New Jersey consumers, Defendants knowingly omitted the fact that they are not licensed as Debt Adjusters, as required by the NJDA.

66. Any contract entered between consumers and Defendants related to debt adjustment services are void ab initio and cannot be enforced.

67. Defendants further violated the NJDA by charging fees in excess of the amount allowed by the statute and by failing to distribute the funds provided by Plaintiff and consumers within 10 days of receipt as required by the statute. N.J.S.A. 17:16G-6; N.J.S.A. 17:16G-9(a).

68. Defendants' violations of the NJDA injured Plaintiff and New Jersey consumers.

69. Thus, Plaintiff and New Jersey consumers are entitled to recover damages pursuant to N.J.S.A. 17:16G-8.

**WHEREFORE,** as to Count One, Plaintiff, on behalf of herself and the putative class members, hereby requests a Judgment against Defendants,

a. Granting class certification for class-wide equitable relief under R. 4:32-1(b)(2), for recovery of damages pursuant to N.J.S.A. 17:16G-8, ruling that:

i. The Defendants violated the NJDA by engaging as Debt Adjusters in New Jersey as a for-profit entity and without a license;

ii. Plaintiff's and putative class members' contracts with Defendants were illegal and are void, in accordance with the NJDA;

iii. That the void contracts cannot be collected upon by Defendants;

iv. The fees charged by the Defendants were in excess of the amount allowed under the NJDA;

v. The Defendants violated the NJDA by failing to disburse debtors' funds to creditors within 10 days of receipt;

vi. At all relevant times hereto, Defendants did not have the legal capacity to collect or receive any principal, interest or charges under the void contracts; and

vii. All monies collected by Defendants from consumers should be returned to consumers.

b. Awarding damages to Plaintiff and the Class; and

c. For such other and further relief as the Court deems equitable and just.

## VIII. COUNT II

**Violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*., and The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101, *et seq*., and the Federal Trade Commission Telemarketing Sales Rule, 16 C.F.R. 310.1, *et seq*. on Behalf of Herself and the Class**

70. Plaintiff and members of the class repeat and reallege all allegations as if set forth at length herein.

71. The Defendants operate an unlawful business scheme and are engaging in unconscionable commercial practices, fraudulent activity, false

promises, misrepresentation and knowing admissions of fact as described above in violation of the CFA. N.J.S.A 56:8-2.

72. Defendants are "persons" within the meaning of the CFA at N.J.S.A. 56:8-1.

73. Plaintiff and those similarly situated purchased "merchandise" within the meaning of the CFA at N.J.S.A. 56:8-1.

74. Defendants engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in connection with the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

75. Defendants engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in the subsequent performance of the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

76. Defendants committed unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in direct violation of the CFA at N.J.S.A. 56:8-2 by:

a. Failing to disclose Defendants are unlawfully conducting debt adjustment and credit counseling services in New Jersey since Defendants are for-profit entities and were not licensed, pursuant to the NJDA or N.J.S.A 2C:21-19(f);

b. Charging illegal fees, in violation of the NJDA;

c. Failing to disburse funds within 10 days of receipt, in violation of

the NJDA;

d. Engaging in the unauthorized practice of law as described in Count VIII of this Complaint as to Defendant Panamerican; and

e. Demanding and accepting payments from Plaintiff and those similarly situated on the illegal contracts.

77. As a result of Defendants' unlawful actions, Plaintiff and the Class members suffered ascertainable loss in the amount of monies collected, and/or paid on the void contracts, entitling them to treble damages under the CFA, at N.J.S.A. 56:8-19.

78. Plaintiff is a "person" and "customer" as defined by the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, *et seq*., and its implementing regulation, Federal Trade Commission Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(n), (y).

79. Defendants are "sellers" and "telemarketers" as defined by the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, *et seq*., and the TSR, 16 C.F.R. § 310.2(dd), (ff).

80. Defendants regularly engage in interstate telemarketing to sell products or services using the telephone as defined by the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq., and the TSR, 16 C.F.R. §310.2(gg). Defendants provide "debt relief service[s]" as defined by the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq., and the TSR at 16 C.F.R. §310.2(o):

> Debt relief service means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

81. Defendants do not meet any Exemption to the TSR's application as set forth in 16 C.F.R. §310.6.

82. Defendants received interstate phone calls from Plaintiff.

83. Defendants are subject to the TSR.

84. Section 310.3(a)(viii)(A) of the TSR requires sellers or telemarketers such as Defendants to clearly and conspicuously disclose to Plaintiff the amount of time necessary to achieve the represented results, and the time by which the Defendants would make a bona fide settlement offer to any creditors or debt collectors of Plaintiff.

85. Section 310.3(a)(viii)(B) of the TSR requires sellers or telemarketers such as Defendants to clearly and conspicuously disclose to Plaintiff the amount of money that the Claimant must accumulate before a bona fide offer of settlement would be made to a creditor. Section 310.3(a)(viii)(C) of the TSR requires sellers or telemarketers such as Defendants to clearly and conspicuously disclose to Plaintiff that the use of the 'service' might adversely impact the Claimant's creditworthiness, that by use of the service the Plaintiff may be subject to

collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest.

86. Section 310.3(a)(viii)(D) of the TSR requires sellers or telemarketers such as Defendants to clearly and conspicuously disclose to Plaintiff that the funds held in the requisite financial account are owned exclusively by Plaintiff and that those funds may be withdrawn at any time with exception only for fees earned by Defendants in compliance with §310.4(a)(5)(i)(A).

87. As sellers and telemarketers of debt relief services, Defendants was required to make the disclosures set forth in the TSR and failed to make the disclosures required under Sections 310.3(a)(1)(viii)(A-D) to its customers.

88. Defendants violated the TSR by failing to make the disclosures required under Section 310.3(a)(1) (viii)(A-D) to Plaintiff.

89. Section 310.4(a)(5) of the TSR prohibits sellers or telemarketers such as Defendants from requesting or receiving payment of any fee or consideration for their debt relief service prior to renegotiation, settlement, reduction, or otherwise alteration of the terms of at least one debt and the customer has made at least one payment pursuant to that resolution.

90. As sellers and telemarketers of debt relief services, Defendants are prohibited from receiving payment contrary to the requirements set forth in Section 310.4(a)(5).

91. Defendants violated Section 310.4(a)(5) of the TSR by demanding and receiving payments from Plaintiff prior to renegotiation, settlement, reduction, or otherwise alteration of the terms of at least one debt and before the customer has made at least one payment pursuant to that resolution.

92. Section 310.3(a)(2) of the TSR prohibits sellers or telemarketers such as Defendants from misrepresenting: (i) the total cost of their services; (ii) any material conditions on the use of their service; (iii) any material aspect of the performance, efficacy, nature or central characteristics of their service; and (iv) any material aspect of the customer's ability to cancel or withdraw from the service; and (x) any material aspect of any debt relief service. As sellers and telemarketers of debt relief services, Defendants are prohibited from making misrepresentations as set forth in Section 310.3(a)(2).

93. Defendants violated Section 310.3(a)(2) of the TSR by making misrepresentations to Plaintiff regarding the nature of their services; total cost of their services; the amount of money to be saved by using their services; the amount of money that must be accumulated before any bona fide offer to resolve debt will be initiated; the impact on creditworthiness; the amount of prior customers to attain the represented results; the amount of time necessary to achieve the represented results; and the effect of the service on collection efforts of the customer's creditors or debt collectors, among other misrepresentations.

94. Defendants' violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq., and its implementing regulation, the TSR, are deceptive and abusive practices as defined therein.

95. Defendants are subject to the TSR as set forth herein.

96. Defendants' violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq., and its implementing regulation, the TSR, 16 C.F.R. §§ 310.3, 310.4 as set forth herein are deceptive and abusive practices as defined therein.

97. Defendants' violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq., and its implementing regulation, the TSR, as set forth herein, constitute unlawful acts in violation of the CFA.

98. Defendants' violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq., and its implementing regulation, the TSR, is an unconscionable commercial practice or other direct affirmative act in violation of the CFA at N.J.S.A. § 56:8-2. Defendants' unlawful acts under the TSR and the CFA caused Plaintiff to suffer an ascertainable loss in an amount equal to, but not limited to, unlawful monies paid to Defendants.

99. Plaintiff is entitled to treble damages, attorneys' fees, and costs pursuant to N.J.S.A. §56:8-19.

**WHEREFORE,** as to Count Two, Plaintiff, on behalf of herself and the

putative Class members, hereby requests a Judgment against Defendants,

a. Granting class certification of the Class under R. 4:32-1(b)(3);

b. Awarding treble damages under the CFA, at N.J.S.A. 56:8-19;

c. Granting a permanent injunction against Defendants, pursuant to the CFA, at N.J.S.A. 56:8-19, prohibiting them from making or entering into any new debt adjustment service contracts and from making any further attempts to enforce payments from New Jersey consumers related to the illegal debt adjustment service contracts, including an injunction against any attempt to collect upon, enforce or assign the contracts, or to seek collection remedies on or assign any outstanding balances;

d. Directing Defendants to provide equitable notice relief pursuant to the CFA, providing for notice to Class members of the declaratory and injunctive ruling;

e. Awarding Plaintiff's counsel reasonable attorneys' fees and costs under the CFA, at N.J.S.A. 56:8-19;

f. For pre-judgment and post-judgment interest; and

g. For such other and further relief as the Court deems equitable and just.

## IX. COUNT III
## Unjust Enrichment and Disgorgement on Behalf of Herself and the Class

100. Plaintiff and the members of the Class repeat and reallege all allegations as if set forth at length herein.

101. Defendants have been unjustly enriched by the funds that they have received from Plaintiff and the Class through unenforceable contracts.

102. The funds collected by Defendants conferred a benefit on Defendants.

103. Defendants know that they received a benefit by receiving funds from

Plaintiff and the Class.

104. Defendants' retention of the benefits conferred on them based on unenforceable contracts entered without a license pursuant to NJDA and N.J.S.A 2C:21-19(f), as well as other unlawful acts described herein, would be unjust.

105. Defendants should be ordered to disgorge the payments or provide restitution to the Class.

106. The disgorgement or restitution should include any profits or other benefits enjoyed by the Defendants as a result of the acceptance of the Class's funds.

**WHEREFORE,** as to Count Three, Plaintiff, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendants,

a. Granting class certification of the Class under R. 4:32-1(b)(3);

b. A money judgment for restitution or disgorgement of all amounts collected by Defendants from the Class including any profits or other benefit enjoyed by Defendants as a result of unlawfully receiving and using the funds from them;

c. For attorney's fees, litigation expenses and costs in connection with this action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just.

## X. COUNT IV
## Truth-In-Consumer Contract, Warranty and Notice Act on Behalf of Herself and the Class

107. Plaintiff and members of the class repeat and reallege all prior allegations as if set forth at length herein.

108. Defendants are "sellers" as defined under the TCCWNA.

109. Defendants' contracts with Plaintiff and other New Jersey consumers violate several clearly established legal rights, such as failing to acquire a license under the NJDA and N.J.S.A 2C:21-19(f).

110. Plaintiff and New Jersey consumers have the right to be protected from unlicensed Debt Adjusters, pursuant to the NJDA, and the right to be protected against unlawful business practices under the CFA.

111. Such violations of clearly established legal rights resulted in damages for Plaintiff and the Class.

112. Defendants' contracts contained provisions by which the consumer waives his rights under TCCWNA.

113. Defendants' contracts stated that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable, or inapplicable within the State of New Jersey.

**WHEREFORE,** as to Count Four, Plaintiff, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendants,

a. Granting class certification of the Class under R. 4:32-1(b)(3);

b. A civil penalty of not less than $100.00 to each Class member, in addition to actual damages;

c. For attorney's fees, litigation expenses and costs in connection with this
action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just.

## XI. COUNT V
## New Jersey Racketeer Influenced and Corrupt Organizations Act on Behalf of Herself and the Class

114. Plaintiff and the members of the class repeat and reallege all prior allegations as if set forth at length herein.

115. At all relevant times, Defendants were engaged in trade or commerce or in activities affecting trade or commerce in connection with the sale of debt adjustment services in the State of New Jersey to New Jersey consumers.

116. Defendants have, among other things, engaged in a pattern of racketeering, including criminal conduct that has either the same or similar purposes, results, participants, victims, methods of commission or are otherwise inter-related by distinguishing characteristics and are not isolated incidents.

117. The criminal conduct includes, but is not limited to, violation of the following New Jersey Statutes:

a. Theft by deception, N.J.S.A. 2C:20-4;

b. Deceptive business practices, N.J.S.A. 2c:21-7(h) by making false and misleading written statements for the purposes of obtaining

property;

c. Falsifying records or uttering any writing or record knowing that it contains a false statement or information with the purpose to deceive or injury or to conceal any wrongdoing;

d. Making false or misleading statements in any advertisement addressed to the public or to a substantial segment thereof for the purpose of promoting the purchase or sale of services, N.J.S.A. 2C:21-7e;

e. Selling, offering or exposing for sale or delivery less than the represented quantity of services, N.J.S.A. 2C:21-7b;

f. Causing or inducing another by deception as to the contents of the instrument to execute the instrument effecting or purposely to affect or likely to affect the pecuniary interest of the person, NJ.S.A. 2C:21-16;

g. Acting or offering to act as a Debt Adjuster without a license and without qualifying for any exemption from the license requirement, N.J.S.A 2C:21-19(f).

h. Conspiracy to commit the aforesaid crimes, N.J.S.A 2C:5-2 and all its subparts; and

i. Conspiring to violate any of the provisions of N.J.S.A 2C:41-2(c).

118. Defendants' actions in furtherance of racketeering include, but are not limited to:

a. Recruiting front-end and back-end affiliates to commit violation of the aforesaid crimes, which include lead generators, debt relief companies and service companies and their agents, servants and employees;

b. Marketing and soliciting materials and preparing and providing documentation and making oral representations giving the false impression the person was being represented by an attorney or licensed Debt Adjuster;

c. Conspiracy to carry out an unlawful business scheme described in this Complaint;

d. Falsely promising to provide debt relief services and accepting money from debtors in reliance on those promises;

e. Receiving or paying commissions, fees and other renumeration for unlawful services rendered by Defendants to debtors;

f. Advertising, marketing, promoting and providing contracts and other documentation which falsely create an illusion or impression that debt relief services are being or will be lawfully performed, constitute the practice of law or being performed incidental to the practice of law;

g. Collecting illegal fees, charges and costs for performing illegal services and services not permitted by law;

h. Accepting money from New Jersey residents or residents of other states doing business with the Defendants within the State of New Jersey or with connection to the State of New Jersey knowing that it is unlawful to do so;

i. Conspiracy with and amongst themselves and others to violate the provisions of N.J.SA 2C:41-2(d); and

j. Receiving income or proceeds directly from the pattern of racketeering.

119. Such pattern of behavior is indicative of the criminal and racketeering efforts of the Defendants to fraudulently profit off of New Jersey consumers.

**WHEREFORE**, as to Count Five, Plaintiff, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendants,

a. Granting class certification of the Class under R. 4:32-1(b)(3);

b. For attorney’s fees, litigation expenses and costs in connection with this action;

c. For pre-judgment and post-judgment interest; and

d. For such other and further relief as the Court deems equitable and just.

## XII. COUNT VI
## Uniform Declaratory Judgments Law on Behalf of Herself and the Class

120. Plaintiff and members of the class repeat and reallege all prior allegations as if set forth at length herein.

121. Under the Uniform Declaratory Judgments Law ("UDJL") at N.J.S.A. 2A:16-53, Plaintiff and the putative Class members are "person[s] interested under a… written contract" and "person[s]… whose rights, status or other legal relations are affected by a statute" and therefore, they "may have determined any question of construction or validity arising under the… contract… and obtain a declaration of rights, status or other legal relations thereunder."

122. Plaintiff and the Class are entitled to a declaratory judgment that the debt adjustment and credit counseling services contracts entered with the Defendants are void and unenforceable.

123. The contract Defendants use to effectuate their unlawful business violated the NJDA, CFA, and TCCWNA as set forth above.

124. Plaintiff and the Class are entitled to a declaratory judgment that the monies obtained by Defendants against them were illegal and in violation of New Jersey law.

125. Defendants and their agents or others acting on their behalf should be

enjoined from any further action or failing to take actions that result in any effort to enforce contracts that are declared void or unenforceable.

**WHEREFORE,** as to Count Six, Plaintiff, on behalf of herself and the putative class members, hereby requests a Judgment against Defendants,

a. Granting class certification for class-wide equitable relief under R. 4:32-1(b)(2), for a declaratory judgment applicable to Plaintiff and the putative Class, pursuant to the UDJL at N.J.S.A. 2A:16-53, ruling that:

    i. The Defendants violated the NJDA by engaging as Debt Adjusters in New Jersey as a for-profit entity and without a license;

    ii. Plaintiff's, and the putative class members', contracts with Defendants were illegal and are void, in accordance with the NJDA, CFA, and TCCWNA;

    iii. That the void contracts cannot be collected upon by Defendants;

    iv. The fees charged by the Defendants were in excess of the amount allowed under the NJDA;

    v. The Defendants violated the NJDA by failing to disburse debtors' funds to creditors within 10 days of receipt;

    vi. At all relevant times hereto, Defendants did not have the legal capacity to collect or receive any principal, interest or charges under the void contracts; and

    vii. All monies collected by Defendants from consumers should be returned to consumers.

## XIII. COUNT VII
## Fraud on behalf of Herself and the Class

126. Plaintiff and members of the class repeat and reallege all prior allegations as if set forth at length herein.

127. Defendants entered into agreements where Plaintiff and Class Members would pay a monthly payment over a period of time to have Defendants settle all open collection accounts against Plaintiff, as well as for other debt relief services.

128. Defendants never intended to lawfully perform on the Contract, as Defendants never obtained the prerequisite Debt Adjuster license, pursuant to the New Jersey Debt Adjustment and Credit Counseling Act, N.J.S.A. 17:16G-1, et seq. ("NJDA").

129. Defendants omitted the material fact that they were not licensed to lawfully act as debt adjusters under the NJDA as they were unlicensed and not a non-profit organization.

130. Upon signing the Contract, Plaintiff reasonably relied on Defendants' material omission that they were unlicensed and illegally operating as Debt Adjusters.

131. Had Plaintiff known that Defendants made such a material omission, and were unable to operate as lawful Debt Adjusters, Plaintiff would have never entered into the Contract with Defendants.

132. Defendants knew they were unlicensed, as required by the NJDA.

133. Defendants omitted that fact because they knew that if Plaintiff knew they were unlicensed, Plaintiff would not have agreed to the contract.

134. Plaintiff had no reason to believe they were unlicensed since Defendants represent themselves as legitimate businesses.

135. Plaintiff and members of the Class were injured by Defendants' omissions since all the funds collected from the contracts were unlawful.

136. Further, Plaintiff and members of the Class were harmed by Defendants' failure to lawfully manage accounts, leading to severe economic damages.

**WHEREFORE,** as to Count Seven, Plaintiff and members of the class hereby request a Judgment against Defendants,

a. For compensatory damages;

b. For punitive damages;

c. For attorney's fees, litigation expenses and costs in connection with this action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just.

## XIV. COUNT VIII
## Violation of Statute Prohibiting the Unauthorized Practice of Law as to Defendants on behalf of Herself and the Class

137. Plaintiff and members of the class repeat and reallege all prior allegations as if set forth at length herein.

138. Defendants have engaged in the unauthorized practice of law.

139. Defendants are liable for statutory and actual damages and other relief

allowed by N.J.S.A. 2C:21-22a.

**WHEREFORE**, as to Count Eight, Plaintiff, on behalf of herself and the Class, hereby request a Judgment against Defendants:

a. Granting class certification of the Subclass under R. 4:32-1(b)(3);

b. An award of damages, including $1,000 minimum damages to each class member, and other relief allowed by N.J.S.A. 2C:21-22a to the Class;

c. A money judgment of all amounts collected from the Class as a result of Defendants' unauthorized practice of law, including treble damages;

d. For attorney's fees, litigation expenses and costs in connection with this action;

e. For pre-judgment and post-judgment interest; and

f. For such other and further relief as the Court deems equitable and just.

## XV. JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial by jury.

## XVI. DEMAND FOR DISCOVERY OF INSURANCE INFORMATION

Plaintiff hereby demands discovery of any and all insurance agreements or policies which may be available to satisfy part of any judgment rendered in this matter against any party in favor of Plaintiff. For each insurance agreement or policy available to each party, please provide the following: (A) The name of the insurance company; (B) The named insured; (C) The names of any additional insured; (D) The policy period; and (E) The limits of coverage. Please produce this

information within thirty days.

## XVII. NOTICE TO ATTORNEY GENERAL

A copy of this Complaint will be emailed to the Attorney General of the State of New Jersey within 24 hours after the filing with the Court, pursuant to N.J.S.A. 56:8-20.

## XVIII. DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Yongmoon Kim, Esq. is designated as trial counsel for Marie Yolene Dumay-Mellon.

## XIX. CERTIFICATION

Pursuant to Rule 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding and that no other action or arbitration proceeding is contemplated. I further certify that I know of no party who should be joined in this action at this time.

I hereby certify that pursuant to Rule 1:38-7: All confidential identifiers of the parties to this action have been redacted from all documents or pleadings submitted to the Court.

KIM LAW FIRM LLC

*/s/ Yongmoon Kim*
Yongmoon Kim, Esq.

DATED: August 4, 2025

Panamerican Consulting

# Validation Program Enrollment Packet

# EXHIBIT A


ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

# Welcome to Panamerican Consulting's Validation Program

Thank you for the opportunity to provide you this outstanding service. A tremendous amount of expertise has been utilized to develop this service and we are confident that you and your family will have a successful outcome. Our staff consists of only the most experienced professionals in the industry. You will find our entire staff to be personal, knowledgeable, hardworking and efficient.

While Panamerican Consulting does not settle, consolidate, engage in credit repair or provide credit card counseling, we can help you verify the validity of your unsecured debts by using the rules and regulations of the Fair Debt Collection Practices Act (FDCPA). It is your right to request verification of debts from third-party collectors such as collection agencies and collection attorneys. The validation process can be laborious and tedious, but you have nothing to fear with our expertise on your side.

We understand what you are going through and want to help as you manage your way through financial hardship. We can be your source of guidance, helping you avoid the pitfalls that can further jeopardize your financial base, while directing you to make the proper decisions in times of uncertainty.

## Our Solution

***Step One: Recognize and Accept the Problem***

If you have negative cash flow (i.e., your expenses exceed your income) or you would like to save more than you are currently able to, take a close look at what money you have going out. Can you get a part- time job? Rent out a room in your house? Cut back on dining out? Skip the daily $4 latte? Get a cheaper cable package or cut your land-line phone? Increasing income can be difficult, but most people have some expenses they can trim. Assess your circumstances honestly and decide what is a necessity and what is not.

***Step Two: Identify a Solution***

Identifying a clear and achievable solution is a crucial part of anyone's financial plan. There are many options available to consumers facing financial difficulty. Our specialty is providing debt validation services that allow consumers to verify unsecured debts when third-party creditors make collection attempts. Panamerican Consulting's Validation Program is the perfect plan for many individuals; thoughtfully determine if it is the perfect solution for you and your family.

***Step Three: Take Action***

Panamerican Consulting can help you achieve your financial goals! Using our pro-active Validation Program, enrolled clients will enjoy superior care and security of a performance based validation program. We will earn your trust and confidence by successfully performing our validation services and aim for the best results possible.

Sincerely,

*Panamerican Consulting*

EXHIBIT A

Panamerican Consulting

**Applicant & Co-Applicant Information**

| | | | |
|---|---|---|---|
| Applicant's Name: | Marie Dumay Mellon | Co-Applicant's Name: | |
| Mailing Address: | REDACTED | Mailing Address: | |
| City: | REDACTED | City: | |
| State: | NJ | State: | |
| Zip Code: | REDACTED | Zip Code: | |
| Home Phone: | | Home Phone: | |
| Cell Phone: | REDACTED | Cell Phone: | |
| Work Phone: | | Work Phone: | |
| E-Mail: | REDACTED | E-mail: | |
| Date of Birth: | REDACTED | Date of Birth: | |
| Social Security: | REDACTED | Social Security: | |

Marie Dumay Mellon 8/3/2021

Applicant's Signature Date

Co-Applicant's Signature Date

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

**List of Enrolled Accounts**

| Creditor | Account # | Amount Owed |
|---|---|---|
| AMEX/DSNB | REDACTED | $1,770.00 |
| SYNCB/CARE CREDIT | REDACTED | $6,564.00 |
| | | **$8,334.00** |

Applicant Initial: MDM

Co-Applicant Initials: ______

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

**Estimated Terms of Program**

| | |
|---|---|
| Total amount of debt enrolled: | REDACTED |
| My/Our Validation Program Cost: | REDACTED |
| Program term: (months) | REDAC |
| My/Our monthly payments to Panamerican Consulting: | REDACTED |
| First payment due date: | REDACTED |
| I/We can afford the new monthly payments made to Panamerican Consulting: | YES |

**Additional Comments:**

Marie Dumay Mellon — 8/3/2021

Applicant's Signature — Date

Co-Applicant's Signature — Date

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

**Debt Validation Agreement**

This Debt Validation Agreement ("Agreement") is made between PANAMERICAN CONSULTING, LLC, located at 3843 S. Bristol Street #308, Santa Ana, CA 92704 ("Company") and Marie Dumay Mellon , ("Client"). The parties agree as follows:

**SERVICES**

Company agrees to provide debt validation services to Client under the terms and conditions of this Agreement (the "Service"). The Service consists of written communications with creditors of unsecured debt, on behalf of Client, requesting validation of the debt. Client expressly grants permission for Company to contact its creditors and collectors to validate debts on behalf of Client. Company will keep confidential the personal financial information provided by Client, except as is necessary to provide the Service. The Services will be provided until the Agreement is terminated pursuant to Section 5 (TERM).

**CLIENT OBLIGATIONS**

Client will perform the following obligations:

1. Client shall inform Company of any additional debtor, co-signer or guarantor of any of the Program Debt.
2. The list of creditors and associated debts ("Accounts") provided in the enrollment package is the complete list of the Accounts to be validated by the Company. All Accounts must fall within Company "unsecured debt" guidelines. A listing of all such Accounts is provided in 'List of Enrolled Accounts' page. No secured debts or federal student loans will be accepted into the program. Client understands that Company reserves the right to refuse enrollment of any Account into the program. Adding an Account will require a written amendment to this Agreement. All information provided by Client must be truthful and accurate. Company is under no obligation to verify information supplied by client.
3. Client will forward all correspondence from creditors to Company, including collection letters.
4. Client will timely respond to all calls and requests for documentation from the Company and will promptly advise Company of any change in address or telephone number and/or email address.
5. Company will develop and Client will follow the Payment Schedule, agreed upon by client in this Agreement. This schedule outlines all funds required for payment of Service Fees.
6. Client shall make no further charges to any Account enrolled in the program. If Client incurs additional charges on any Account, Company has the right to terminate the Agreement.
7. Client shall make all payments in accordance with the Payment Schedule. No payment reschedule shall be authorized within 5 days of the payment date.

**COMPENSATION**

The Service will be deemed complete as to an Account and compensation payable by Client to Company ("Service Fee"), when either (i) a request for validation of an Account has been sent or (ii) a collector acknowledges in writing that it does not have sufficient validation of the Account. Upon Service completion of an Account, Client shall pay Company the agreed upon percentage of the total amount of the account. Upon Service completion of an Account the Service Fee on the Account shall be immediately due and Client shall pay the Service Fee for that Account. Client authorizes any third party provider selected by Client to initiate the debit of Client's checking or saving account, in accordance with the Electronic Payment Authorization, for payment of the earned Service Fee upon Service completion of an Account. The Electronic Payment Authorization is incorporated herein by reference.

Applicant Initial: MDM

Co-Applicant Initial: ____________

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

This Agreement will terminate upon the conclusion of the Statue of Limitations in Client's state, or upon the lack of validation of each Account, or upon termination by either party as provided below. Client has a limited right of rescission, as provided for below.

**TERMINATION AND CANCELLATION POLICY**

CLIENT MAY TERMINATE AND CANCEL THIS AGREEMENT ANYTIME WRITTEN NOTICE TO COMPANY FOR ANY REASON OR NO REASON FOLLOWING WRITTEN NOTICE TO COMPANY. COMPANY MAY TERMINATE THIS AGREEMENT ON 5 DAY WRITTEN NOTICE TO CLIENT IF CLIENT FAILS TO PROMPTLY RETURN DOCUMENTS, FAILS TO PROMPTLY RESPOND TO COMMUNICATIONS FROM COMPANY, FAILS TO SET ASIDE MONEY IN ACCORDANCE WITH THE SAVINGS SCHEDULE OR BREACHS ANY OTHER PROVISION OF THIS AGREEMENT.

**ASSIGNMENT**

Company may assign the Services to be provided under this Agreement to any qualified third party in its discretion without the prior consent or notification of Client.

**ACKNOWLEDGMENTS AND DISCLAIMERS**

Client acknowledges and agrees that:

1. The outcome of the Service and whether the validation of the debt is provided is uncertain and cannot be guaranteed. Client understands that each situation is unique and that results will vary.
2. Creditors may continue collection efforts while enrolled in the program, including initiating legal action. Company cannot stop these collection efforts. In the event a creditor or debt collector pursues legal remedies against Client, neither this Agreement nor the Service includes legal representation. If court action is initiated against Client, the Client is responsible for responding or arranging for legal representation. Client understands and acknowledges that the debt accounts are owed and outstanding; yet they are rendered non-collectible due to lack of validation or time-barred due to Statute of Limitations in Client's state.
3. The enrollment of Accounts in this program may have an adverse effect on Client's credit rating. The Company is not responsible for the actions of the creditors in response to request for validation of debt. The Service does not include the modification, correction or improvement of Client's credit reports. Company cannot guarantee how credit reporting agencies will report a failure to validate.
4. If a debt account is found to be valid, Client has the option to remove that account from Company's program and enroll that account into a Debt Settlement program, Credit Repair, Debt Management Program, file bankruptcy and/or do nothing.
5. If you fail to make the minimum monthly payments to creditors while participating in the program, the Account will likely incur late fees, interest and other penalties and the account balance will increase. Client is responsible for payment of the Account. The Service does not involve the settlement of the Accounts. Client acknowledges that Company has not instructed client to cease making payments on any Account or Accounts.
6. The Service does not include any tax representation, such as audit and verification, debt retirement, or Internal Revenue Service offer and compromise.
7. The discharge of indebtedness in excess of $600.00 is considered taxable income, which may be reported by a creditor; Client should seek the advice of a tax professional.
8. All inbound and outbound calls between Company and Client may be recorded for quality assurance.
9. Client consents to do business electronically with Company. Client understands that electronic transactions, not limited to emails, are inherently unsecure and that both Client and Company will take all reasonable steps to maintain the Privacy of the information shared between the parties. Client consents to receive information and documents relating to this Agreement and Company services via electronic mail, text message, facsimile, voicemail, and any other common electronic means. Client understands that all costs associated with the receipt, review and use of such electronic communications shall be those of Client, such as maintaining access to the Internet or paying for text messages. Client consents to receive updates and documents relating to this Agreement and the services and programs offered by Company via prerecorded voice messages, text/SMS messages, and/or through the use of an automated dialing system. Client may contact Company at any time to opt-out of receiving updates, new programs or offers through prerecorded or autodialed messages. Consent to this section does not bind Client to any future purchases of new services or offers.

EXHIBIT A

Applicant Initial: MDM

Co-Applicant Initial: ____



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

**LIMITATION ON REMEDY AND DAMAGES**

DESPITE ANYTHING TO THE CONTRARY IN THIS AGREEMENT OR OTHERWISE, NEITHER PARTY WILL BE LIABLE WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT UNDER ANY CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR OTHER LEGAL OR EQUITABLE THEORY FOR ANY INCIDENTAL, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES, EVEN IF THAT PARTY HAS BEEN NOTIFIED OF THE POSSIBILITY OR LIKELIHOOD OF SUCH DAMAGES OCCURRING, AND WHETHER SUCH LIABILITY IS BASED ON CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR OTHERWISE. THE LIMITATIONS OF THIS SECTION SHALL APPLY NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**ARBITRATION**

In the event of any controversy, claim or dispute between the parties arising out of or relating to this agreement or the breach, termination, enforcement, interpretation, consionability or validity thereof, including any determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Orange County, California or in the county in which the consumer resides, in accordance with the Laws of the State of California for agreements to be made in and to be performed in California.The parties agree that the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to its rules and procedures and an arbitrator shall be selected by the AAA. The arbitrator shall be neutral and independent and shall comply with the AAA code of ethics. The award rendered by the arbitrator shall be final and shall not be subject to vacation or modification. Judgment on the award made by the arbitrator may be entered in any court having jurisdiction over the parties. If either party fails to comply with the arbitrator's award, the injured party may petition the circuit court for enforcement. The parties agree that either party may bring claims against the other only in his/her or its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. Further, the parties agree that the arbitrator may not consolidate proceedings of more than one person's claims, and may not otherwise preside over any form of representative or class proceeding. The parties shall share the cost (not attorney’s fees) of arbitration equally. If the consumer's share of the cost (not fees) is greater than $2,000.00 (Two-thousand dollars), the company will pay the consumers share of costs in excess of that amount. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award. Binding Arbitration means that both parties give up the right to a trial by a jury. It also means that both parties give up the right to appeal from the arbitrator’s ruling except for a narrow range of issues that can or may be appealed. It also means that discovery may be severely limited by the arbitrator.This section and the arbitration requirement shall survive any termination.

**CHOICE OF LAW**

The laws of the State of California will govern this agreement without regard to the conflict of laws provisions thereof.

**INTEGRATION**

This Agreement and the Schedule are the complete and exclusive statement of the agreement and supersedes any proposal, prior agreement, oral or written, and any other communications relating to the settlement of debt.

Applicant Initial: MDM

Co-Applicant Initial: ____________

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

**AMENDMENT**

This Agreement may not be changed, amended, terminated, rescinded or discharged, except by a writing document executed by the parties hereto and no waiver of any of the provisions or conditions of this Agreement or any of the rights of a party hereto shall be effective or binding unless such waiver shall be in writing and signed by the party claimed to have given such waiver.

**SEVERABILITY**

If any of the above provisions are held to be invalid or unenforceable, the remaining provisions will not be affected.

**CONSENT TO OBTAIN CREDIT REPORT**

I, Marie Dumay Mellon , authorize Company to obtain and review my consumer credit report. Company will use the consumer credit report to verify personal credit information. Upon request, Company will provide Client(s) with the name and address of the Consumer Reporting Agency contacted to supply the report. I understand that credit inquiries may have the potential to impact my credit score. It is understood that a copy of this form will also serve as authorization.

**NOTICE OF RIGHT TO RESCIND OR CANCEL:** CLIENT MAY RESCIND OR CANCEL THIS AGREEMENT WITHOUT PENALTY OR OBLIGATION AT ANY TIME BEFORE MIDNIGHT OF THE FIFTH BUSINESS DAY AFTER YOU HAVE SIGNED THE AGREEMENT. IN ORDER TO RESCIND OR CANCEL, YOU MUST PROVIDE TIMELY WRITTEN NOTICE TO COMPANY.

Marie Dumay Mellon — 8/3/2021

Applicant's Signature — Date

Co-Applicant's Signature — Date

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

# Authorization Letter to Communicate with Creditors and Collection Agencies

I/We Marie Dumay Mellon , expressly grant permission to Panamerican Consulting, all its agents, representatives and its assigns, solely for the purpose of Panamerican Consulting to perform its obligations and the following actions on my/our behal

I/We instruct and authorize Panamerican Consulting and request that recipient comply with such instructions:

1. This letter serves as notice to you and your company to immediately cease and desist all contact and communication with me regarding the collection of an alleged debt and all related matters. That all future communication, including but not limited to communication via telephone, mail correspondence, electronic mail, or facsimile be directed to Panamerican Consulting. This request is made pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692.

**PANAMERICAN CONSULTING**

**ATTN: DOCUMENT PROCESSING**

**3843 S. BRISTOL ST. #308**

**SANTA ANA, CA 92704**

2. To communicate with banks, creditors, financial institutions, credit bureaus, collection agencies, or their agents and assigns, and all other entities and individuals involved with my/our debts and credit issues.

3. To obtain records, debt validations and support for the debts allegedly owed by the undersigned. Panamerican Consulting is authorized to request and receive confidential credit and account information from creditors, credit reporting agencies, debt collectors and other third parties involved with my/our debt and credit issues.

I further authorize Panamerican Consulting to release a copy of this Authorization Letter to any of the above-described parties.

| | |
|---|---|
| Applicant's Name: Marie Dumay Mellon | Co-Applicant's Name: |
| Mailing Address: REDACTED | Mailing Address: |
| City: REDACTED | City: |
| State: NJ | State: |
| Zip Code: REDACTED | Zip Code: |
| Social Security No.: REDACTED | Social Security No.: |

Marie Dumay Mellon

Applicant's Signature — Date: 8/3/2021

Co-Applicant's Signature — Date: 8/3/2021

# EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

# Electronic Funds Transfer (EFT) Authorization to Debit Bank Account

Account Owner Name Marie Dumay Mellon

Social Security Number REDACTED Date of Birth REDACTED

Address REDACTED City REDACTED State NJ Zip REDACTED

Mobile Phone #: REDACTED Bank Name REDACTED

Routing Number REDACTED Account Number REDACTED

Total Amount of Debit 254.87 Date of First Draft Aug 30, 2021 Acct Type: Checking

| Schedule of Fees and Charges | |
|---|---|
| Monthly Banking Fee: | $9.75 |
| Returned ACH?EFT (NSF) Fee: | $6.50 |
| Chargeback/Late Return Fee: | $25 |

***"EPPS-Ph# 800-215-3484"* will appear on your bank statement in reference to your debit**

I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by **EPPS, LLC** and/or its successors for the purpose of accumulating funds to pay for such goods and services as I so direct **EPPS, LLC** to perform. This application is subject to Bank's customer identification program, as required by the USA PATRIOT ACT and other applicable laws, and accordingly, I hereby represent that the above information is true and complete to the best of my knowledge and belief. The bank account information provided above may be subject to account validation processes to include but are not limited to electronic account verification and $0.01 account validation micro-debit.

I hereby authorize Bank, directly or through **EPPS, LLC**, and/or its service provider to administer the Account on my behalf by (a) periodically transferring and depositing funds to the Account pursuant to the authorization provided below, and (b) periodically disbursing funds from the Account pursuant to instructions that I may give from time to time. In this regard, I hereby authorize payments from the Account of the fees and charges provided for in this application and agreement. I hereby grant permission for Bank to share information regarding the Account with **EPPS, LLC** and any other service provider to facilitate the transactions I may initiate that involve the Account, and with any other party that is essential to the administration of the Account on my behalf.

This authorization shall remain in full force and effect until I give written termination notice to **EPPS, LLC**, that affords it a reasonable period of time (at least 10 days) to act on it. Any such notice, and any other written notice that is provided for in this Application or the Agreement, shall be sent to **EPPS, LLC** at the address set forth in this Agreement.

Written notice that is provided for in this Application or the Agreement, shall be sent to EPPS, LLC at the address set forth in this Agreement.

***"EPPS-Ph# 800-215-3484"* Will Appear on Your Bank Statement**

Account Holder's Signature *Marie Dumay Mellon* Date Aug 03, 2021

# EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

**Privacy Policy**

Panamerican Consulting, LLC (hereinafter "Company") is dedicated to protecting your privacy and providing you with the highest level of service. This Policy explains what Company does to keep information about you private and secure. This Policy covers only information that you provide to Company or that it obtains about you from companies that you have chosen to do business with. Please read this Policy carefully and contact us if you have any questions.

**Personal Information We Collect**

The personal information we collect about you comes from the following sources:

- Information we receive from you, such as your name, address, and telephone number, or other information that you provide to us over the phone or in documents or applications,
- Information about your transactions, such as your account balances with your creditors, payment histories, account activity, and all other information that may be contained in your credit card statements or other reports relating to your debt, and
- Information we receive from consumer reporting agencies and other sources, such as your credit bureau reports, collection agency reports or other communications, and other information relating to your payment histories, creditworthiness, annual income, or ability to satisfy your obligations.

We reserve the right to, and will, sell or transfer your personal information to third parties for any purpose in our sole discretion. We prohibit the sale or transfer of personal information to non-affiliated entities for their use without giving you the opportunity to opt-out. We may disclose such information in order to effect or carry out any transaction that you have requested of us or as necessary to complete our contractual obligations with you. We may also share your information with service providers that perform business operations for us, companies that act on our behalf to market our services, or others only as permitted or required by law, such as to protect against fraud or in response to a subpoena. We may also share or transfer our information in the event we transfer or sell your account or our business assets to another provider.

By carrying out those services, we may disclose your information, as we see fit and as permitted by law, to your creditors, credit card companies, collection agencies, banks, and other entities and individuals specifically necessary to effect, administer and perform our services.

**Your Choices/Opt-out**

We provide you the opportunity to ‘opt-out’ of having your personally identifiable information used for certain purposes. By providing information to Company you are consenting to the collection, use and disclosure of such personal information in the manner described in this privacy policy. We provide you the opportunity to withdraw your consent when such information is collected.

Such consent may be withdrawn by calling the telephone number provided below or may be done in writing/email and sent to our customer service department at the following physical address or email address:

Panamerican Consulting, LLC
3843 S. Bristol St, #308
Santa Ana, CA 92704
E-mail: Contact@panamconsulting.com
Phone: 800-745-8360

Initial: MDM

Co-Applicant Initial: ______

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

**How We Protect Your Information**

We train our employees to protect all customer information. We maintain physical, electronic and procedural controls that comply with government standards. We authorize our employees, agents and contractors to get information about you only when they need it to do their work with us. You can help to maintain the security of your online transactions by not sharing your personal information or password with anyone. Remember, no method of transmission over the Internet, or method of electronic storage, is 100% secure.

This Policy applies to current and former customers. If you have any questions, please contact Panamerican Consulting, LLC, at 3843 S. Bristol St, #308, Santa Ana, CA 92704.

Marie Dumay Mellow — 8/3/2021

Applicant's Signature — Date

Co-Applicant's Signature — Date

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

Panamerican Consulting

**Complaint Policy**

Our goal at Panamerican Consulting, LLC is to provide exceptional service to our clients. While every effort is taken to ensure we treat our clients in a fair, courteous, and honest manner, we may occasionally make a mistake.

We believe that our clients have the right to complain and the right to have their complaints addressed. We also believe that a successful organization must be willing to evolve in an effort to meet the needs of its clients. Therefore, we have established a complaint process for clients who are unsatisfied with the service or treatment they receive.

**How to Complain**

In the event you are unsatisfied with our service, please initially direct your comment or complaint with the employee or team responsible. If the individual employee cannot resolve the matter, we will engage the relevant manager or Director to try and resolve matters.

We always attempt to resolve your concerns at the first point of contact. However, if you are not satisfied with the resolution, you may then notify our Compliance Officer in writing at:

1. **Contact@panamconsulting.com or**
2. **Panamerican Consulting**
   **ATTN: Compliance Dept.**
   **3843 S. Bristol St. #308**
   **Santa Ana, CA 92704**

Please include the following in your written correspondence:

1. A clear description of the complaint and any suggestions you may have that would resolve your grievance.
2. Details of any relevant information relating to any contacts you may previously have had with Panamerican Consulting, LLC on this subject.
3. Whether it is an original complaint, or a follow-up to a reply you were not satisfied with.
4. Your complete contact information (including full postal address, telephone number, and email address) and your date of birth (for verification purposes).

**What to Expect**

We strive to resolve all complaints as quickly and efficiently as possible. You can expect to receive a response from us within 10 business days after submitting your complaint. If your case is particularly complex and cannot be resolved within 10 days, we will provide you with an estimated time in which you should expect to receive a response.

EXHIBIT A



ID: 4147597 Signed: 2021-08-03T15:20:37-05:00

E-Signature Completion Certificate

clixsign.

## Your Document Was Successfully Signed!

Congratulations, your document(s) was successfully signed. Please find details below related to your e-signature submission.

### Signing Details

Document ID
REDACTED

Signer Email
REDACTED

Document Title
PANAM ENROLLMENT PACKET

Signer IP Address
REDACTED

Sender IP Address
REDACTED

Timestamp
2021-08-03T15:20:37-05:00

Number Of Signers
1

Document MD5 Hash
REDACTED

### Document Audit

- ✔ Sent at 2021-08-03T15:07:26-05:00 from IPREDACTED
- ✔ Delivered to REDACTED at 2021-08-03T15:17:16-05:00 fromREDACTED
- ✔ Adopted Signature at 2021-08-03T15:17:54-05:00 from REDACTED
- ✔ Completed Signing at 2021-08-03T15:20:37-05:00 from REDACTED
- ✔ PDF Generated at 2021-08-03T15:20:37-05:00

Sending Agent
Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/92.0.4515.107 Safari/537.36 Edg/92.0.902.62

# EXHIBIT A

# Civil Case Information Statement

## Case Details: BERGEN | Civil Part Docket# L-005244-25

**Case Caption:** DUMAY-MELLON MARIE VS PANAMERICAN CONSULTI NG, L
**Case Initiation Date:** 08/04/2025
**Attorney Name:** YONGMOON KIM
**Firm Name:** KIM LAW FIRM LLC
**Address:** 411 HACKENSACK AVE STE 701 HACKENSACK NJ 07601
**Phone:** 2012737117
**Name of Party:** PLAINTIFF : Dumay-Mellon, Marie, Y
**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION
**Document Type:** A
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: Marie Y Dumay-Mellon? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
**CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION**

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES **Title 59?** NO **Consumer Fraud?** YES **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/04/2025
Dated

/s/ YONGMOON KIM
Signed

BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK NJ 07601-7680

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (201) 221-0700
COURT HOURS 8:30 AM - 4:30 PM

DATE: AUGUST 05, 2025
RE: DUMAY-MELLON MARIE VS PANAMERICAN CONSULTI NG, L
DOCKET: BER L -005244 25

THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 2.

DISCOVERY IS 300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS: HON THOMAS A. SARLO

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM 003 AT: (201) 221-0700 EXT 25645.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.

PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE WITH R.4:5A-2.

ATTENTION:

ATT: YONGMOON KIM
KIM LAW FIRM LLC
411 HACKENSACK AVE STE 701
HACKENSACK NJ 07601

JUBRIV8